IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00206-PAB-KLM

DAVID B. HOECK,

      Plaintiff,

v.

LANCE MIKLICH,
TED STENZEL,
DARRYL PROFFIT,
MARY TOOMEY,
LINDA WORTHEN,
SCOTT LANCASTER,
TOM JORDAN,
VALERIE CRAIG,
KEN TOPLISS,
J. STRICKLETT, and
MARY ANN ALDRICH,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Second Amended Prisoner Complaint** [# 28] (the "Motion").[1] Plaintiff, who is proceeding pro se, filed a Response [# 31] in opposition to the Motion on July 15, 2013. Defendants filed a Reply [# 33] to Plaintiff's Response on July 24, 2013. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for

_____

[1] [#28] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

a Recommendation regarding disposition.   The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#28] be **GRANTED**.

## I. Summary of the Case

Plaintiff is an inmate at the Colorado Territorial Correctional Facility ("CTCF").   On June 4, 2013, he filed a Second Amended Complaint [# 25] under 42 U.S.C. § 1983 in which he asserted claims alleging violation of the rights guaranteed to him by the First Amendment, Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"), and C.R.S. § 17-42-101.        In short, Plaintiff alleges that he has tried to practice "the Biblical Christian faith" while incarcerated, which he describes as living "in accordance with the Holy Bible." *2nd Am. Compl.* [#25] at 3.  He argues that Defendants are interfering with his right to exercise his religious beliefs under the First Amendment, RLUIPA, and C.R.S. § 17-42-101 by denying him religious meals on holy days, a place for worship, recognition of his faith group, a church hymnal, and the ability to observe Holy Sabbath days without retaliation.   *Id.* [#25] at 8-10. Additionally, he claims that Defendants are violating his Fourteenth Amendment equal protection rights because they recognize and respect other religions but not his.  *Id.* [#25] at 4.

More specifically, count one of Plaintiff's Complaint alleges that Defendants violated Plaintiff's rights under the First Amendment by depriving him of special meals on holy days, a place for worship, recognition of his faith group, and a church hymnal. *Id.* [#25] at 3.  It

further alleges that Defendants threatened Plaintiff with segregation and terminated him from his prison employment because he exercised his religious beliefs. *Id.* Count two alleges that Defendants violated Plaintiff's Fourteenth Amendment right to equal protection of the law by not allowing Plaintiff to exercise his religious beliefs despite permitting inmates of other religious denominations to do so. *Id.* at 3-4. Counts three and four allege that Defendants violated Plaintiff's rights under RLUIPA and C.R.S. § 17-42-101, respectively, based on the previously alleged facts in count one.[2]

On June 28, 2013, Defendants filed the instant Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting defenses based on the Eleventh Amendment, qualified immunity, failure to state a claim, and statute of limitations. *See generally Motion* [#25]. In Plaintiff's Response, he repeated his allegations from the Second Amended Complaint and identified additional religious items denied to him. *Response* [#31] at 4. In Defendants' Reply, they again asserted that the statute of limitations bars some of Plaintiff's claims and that Plaintiff fails to state a claim because the Complaint is not sufficiently particularized as to each Defendant's alleged actions. *Reply* [#33] at 1-3.

## II. Standard of Review

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841

---

[2] Plaintiff's Second Amended Complaint does not explicitly label his RLUIPA and C.R.S. § 17-42-101 claims as counts three and four. For ease of reference, the Court will refer to them as such. Both counts claim violations based on the previously alleged facts in count one.

F.2d 1011, 1012 (10th Cir. 1987).  The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  If at any time, the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506.  A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings.  *Id.* at 1003.

**B.   Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678.

## C.   Plaintiff's Pro Se Status

Plaintiff is appearing pro se. When considering Plaintiff's Second Amended Complaint [#25] and briefs, the Court is mindful that it must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a pro se litigant's

advocate, nor should it "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).   In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

### A.    Eleventh Amendment

Defendants first raise the issue of Eleventh Amendment immunity.  *Motion* [#28] at 3-4. This challenges the court's subject matter jurisdiction. *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002).   The Eleventh Amendment bars recovery of monetary damages from individual state Defendants sued in their official capacities. *Dreismeier v. Fauvel*, No. 12-cv-011310-KLM, 2013 WL 1365766, at *3 (D. Colo. Apr. 3, 2013).   To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983).   Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

The same principles apply to a RLUIPA claim.  "RLUIPA does not transform a state's

acceptance of federal prison funding into a waiver of its Eleventh Amendment immunity from suits for money damages." *Jotunbune v. Sedillo*, No. CIV 06-809, 2010 WL 1781922, at *4 (D.N.M. Apr. 20, 2010). RLUIPA provides for an award of "appropriate relief against a government." 42 U.S.C.2000cc-2(a). Courts in this district and others have stated that it "appear[s]" that the appropriate relief permitted under an official capacity RLUIPA claim is limited to injunctive or declaratory relief. *See Boles v. Neat*, 402 F. Supp. 2d 1237, 1240-41 (D. Colo. 2005); *Nasious v. Robinson*, No. 08-cv-00262, 2010 WL 1268135, at *3 (D. Colo. Feb. 17, 2010); *Grady v. Holmes*, No. 07-cv-02251, 2008 WL 3539274, at *3 (D. Colo. Aug. 12, 2008). *Accord Van Wyhe v. Reisch*, 581 F.3d 639, 654-655 (8th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 884-885 (7th Cir. 2009); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009); *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006).

Therefore, Eleventh Amendment immunity bars claims against individuals sued in their official capacities "for money damages and relief for prior acts." *See Hunt v. Colorado Dep't of Corr.*, 271 F. App'x 778, 781 (10th Cir. 2008). Here, all twelve defendants are state officers at the Colorado Department of Corrections ("CDOC"). *2nd Am. Compl.*[#25] at 2, 6-7. Consequently, the Court **recommends** that all of Plaintiff's official capacity claims asserted against these Defendants for monetary relief be **dismissed without prejudice** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006).

Plaintiff also seeks injunctive and declaratory relief. *2nd Am. Compl.* [#25] at 5. The Eleventh Amendment does not immunize Defendants from such relief. Citizens may seek

injunctive and declaratory relief against individual state Defendants sued in their official capacity in federal court to "end a continuing violation of federal law." *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (noting "that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law"); *Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1190 (D. Colo. 1999) (concluding that "federal jurisdiction over the individual Defendants in their official capacities for prospective [injunctive] relief is not barred by the Eleventh Amendment and is instead allowed under the *Ex Parte Young* exception"). "[F]ederal court[s] may award an injunction that governs [a state] official's future conduct, but not one that awards retroactive monetary relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Finally, Plaintiff seeks monetary, injunctive, and declaratory relief against all Defendants in their "individual" capacities. Therefore, Plaintiff's First Amendment, Fourteenth Amendment, RLUIPA, and C.R.S. § 17-42-101 official capacity claims for injunctive and declaratory relief and individual capacity claims are examined in more detail below.

**B.    Statute of Limitations[3]**

Plaintiff filed his initial Complaint [#1] on January 28, 2013.  Therefore, the incidents giving rise to his constitutional tort claims must have occurred on or after January 28, 2011. C.R.S. § 13-80-102 (two-year statute of limitations); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) ("For section 1983 actions, state law determines the appropriate statute

---

[3]   Defendants do not assert that Plaintiff's RLUIPA claim is barred by the statute of limitations.  Accordingly, the Court addresses the defense as applied to Plaintiff's § 1983 claims only.

of limitations and accompanying tolling provisions."); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying § 13-80-102 to § 1983 claim).

Once a defendant satisfies his initial burden of showing that a claim is untimely, the burden shifts to the plaintiff to establish a later accrual date or to show that there is a basis for tolling the accrual date. *Holt v. Gagliardi*, No. 09-cv-02033-REB-KLM, 2010 WL 4318869, at *4 (D. Colo. July 26, 2010) (citing *Aldrich v. McCulloch Props. Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). As noted earlier, Defendants rely on Plaintiff's Second Amended Complaint to show that several of the incidents about which Plaintiff complains occurred outside of the statute of limitations. In response, Plaintiff alleges that the accrual date should be tolled under the "continuing violation doctrine" because he continues to be denied his constitutional rights. *Response* [#31] at 2. The continuing violation doctrine has never been applied in a § 1983 action in this Circuit. While the Tenth Circuit Court of Appeals has never explicitly rejected its application, it has held that the doctrine "is simply not applicable to other civil rights actions brought pursuant to Title 42." *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (rejecting the doctrine's application to 42 U.S.C. § 1981 claims). Thus, because this Circuit does not apply the doctrine in § 1983 actions, events which occurred before January 28, 2011, are outside of the statute of limitations and may not be used to support Plaintiff's § 1983 claims.

Nevertheless, Plaintiff's claims are not entirely barred by the statute of limitations, as he also alleges more recent deprivations of his constitutional rights. Based on the date of the filing of Plaintiff's lawsuit (January 28, 2013), the following *alleged* deprivations fall within the two-year statute of limitations: changing the linen exchange from Wednesday to Saturday mornings, which conflicts with Plaintiff's observance of the Seven Day Sabbath

(April 9, 2011), denial of Plaintiff's request for a church hymnal (June 27, 2012), denial of Plaintiff's request for a place of worship (June 27, 2012), the  threat to segregate Plaintiff if he refused to move to another cell on a holy Sabbath day (October 2, 2012), termination of Plaintiff from his prison job assignment for missing work to observe Passover and the Feast of Unleavened Bread (April 10, 2013), placement of Plaintiff on restricted privileges status for missing work to observe his religious beliefs (April 12, 2013), and on-going denial of a religious diet to Plaintiff, which forces him to fast every Sabbath and on other holy days (June 4, 2013).  *2nd Am. Compl.* [#25] at 9-12; *see Douglas v. Fort Collins*, No. 12-cv-02615-MSK-MEH, 2013 WL 5609350, at *5, 7 (D. Colo. Aug. 7, 2013) (holding that while some factual allegations were excluded pursuant to the statute of limitations, plaintiff's remaining allegations could still state a plausible claim for relief).

The following incidents may not be used to support Plaintiff's § 1983 claims because they are excluded as outside of the statute of limitations: (1) Sergeant Michelle Colvin's ("Sgt. Colvin") written reports against Plaintiff which allegedly interfered with his adherence to a kosher diet, 2nd Am. Compl. [#25] at 8;[4] (2) Tony Decesaro's ("Decesaro") denials of Plaintiff's grievances on  April 23, 2009, and May 6, 2010, regarding Plaintiff's religious diet

---

[4] The Court makes two other observations. First, Sgt. Colvin is not named as a defendant in this case, and allegations against her may not be used to support claims against others. *See Singletary v. Edgefield Police Dep't*, No. 9:090-1079-TLW-BM, 2010 WL 3927582, at *7 (D.S.C. Sept. 3, 2010).  Second, Plaintiff alleges that "[o]n February 19, 2009[, his] religious diet was terminated for two violations."  However, because he does not name a particular defendant, this allegation will not be considered against any defendants in the case. *2nd Am. Compl.* at 8.  Plaintiff also alleges that "[o]n March 9, 2010[, he] was not permitted to sign up for [P]assover and feast of Unleavened Bread and was denied access to the necessary unleavened bread and other items to observe them in adherence to the dictates of Plaintiff's conscience and the tenets of his faith." *Id.* Because Plaintiff fails to name Defendant in connection with this allegation, it is also not considered.

and observance of holy days, respectively, *id.*;[5] (3) Defendant Lance Miklich's response on June 15, 2010, to Plaintiff's writing regarding his religious beliefs, telling Plaintiff that he needed to file an A.R. 800-1H, *Id.*; (4) Plaintiff's June 22, 2010 writing to Defendant Ted Stenzel asking for the faith group "Biblical Christian" to be recognized by CDOC, *Id.*; and (5) Defendant Darryl Proffit's September 29, 2010 denial of Plaintiff's request for recognition of Biblical Christian practices as a faith group and failure to inform CDOC employees to allow faith practices that are different from "Messianic Jewish and Christian Identity," *Id.* at 9.  These events may not be used to support the § 1983 claims made in this action, as they are barred by the statute of limitations.  Likewise, they may not be used to support any amended claims brought by Plaintiff under 42 U.S.C. § 1983.

## C.    Qualified Immunity

Defendants additionally seek qualified immunity from Plaintiff's § 1983 claims against them in their "individual" capacities.  *Motion* [#28] at 10-11.  The defense of qualified immunity applies to requests for monetary damages, but not requests for injunctive or declaratory relief.  *Pride Servs., Inc. v. City & Cnty. of Denver*, No. 11-cv-02596-MSK-KLM, 2012 WL 695326, at *3 (D. Colo. Mar. 5, 2012).  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person in their position would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity offers protection both from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  When defendants raise qualified

---

[5] Tony Decesaro is also not named as a defendant in this case, and this allegation may not be considered for that reason.

immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.  One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established."  *Id.*  The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity defense.  *Pearson v. Callahan*, 555 U.S. 223 (2009).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other Circuits must have established the constitutional right.  *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  In other words, there must be case authority in which a constitutional violation was found based on similar conduct.  *See Callahan v. Millard Cnty.*, 494 F.2d 891, 903 (10th Cir. 2007).  Thus, the Court analyzes whether Defendants are entitled to qualified immunity from Plaintiff's First Amendment and Fourteenth Amendment individual capacity claims for monetary relief.

1.     **Sufficiency of Allegations Regarding First Amendment Violation**

Without explanation of the beliefs underlying his attempts to practice his purported religion, Plaintiff simply describes the infringements on those practices which he believes he has suffered.  As mentioned above, Plaintiff alleges that Defendants deprived him of meals necessary for observing holy days and feasts, a place for worship, the right to observe Holy Sabbath days without retaliation, and religious objects required to follow the unstated beliefs and doctrines of "Biblical Christianity."  *2nd Am. Compl.* [#25] at 9-11. According to Plaintiff, these deprivations have denied him the opportunity to worship freely, implicating his First Amendment right to free exercise of religion.  *Id.* at 3.  In response, Defendants assert that nowhere in Plaintiff's Second Amended Complaint does he explain what "Biblical Christianity" entails or what his personal beliefs are.  *Motion* [#28] at 8. Accordingly, they contend, Plaintiff cannot meet his burden of showing that (1) his beliefs are sincerely held; and (2) Defendants substantially burdened his right to exercise those beliefs. *Id.*

In accordance with the First Amendment, "inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs.  What constitutes 'reasonable opportunity' is determined in reference to legitimate penological objectives." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  In order to establish a constitutional violation of his right to free exercise of religion, an inmate plaintiff must survive a two-step inquiry.  First, the plaintiff must show that the defendants "substantially burdened . . . sincerely-held religious beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  "Consequently, '[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in

nature, and whether those religious beliefs are sincerely held.'" *Id.* (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)).  "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'" *Id.* (quoting *Boles*, 486 F.3d at 1182).  The Court then balances the factors articulated in *Turner v. Safely*, 482 U.S. 78 (1987), to evaluate whether the actions were reasonable.  These factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* at 1219 (quoting *Boles*, 486 F.3d at 1181).

The Court is first tasked with assessing whether Plaintiff's beliefs are religious in nature and sincerely-held. *Kay*, 500 F.3d at 1218; *Field v. Beneze*, No. 12-cv-01778-WYD-KMT, 2013 WL 3898880, at *12 (D. Colo. July 29, 2013) ("[T]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held."). This assessment necessarily requires identification of Plaintiff's purported religion as well as explanation of his purported religious beliefs.  The fact that Plaintiff professes to follow a religious text that is well-known in the United States (the "Holy Bible") does not excuse him from specifying his precise beliefs.

By way of illustration, if Plaintiff professed to be a Muslim living in accordance with the philosophy of the Holy Quran, the Court's assessment of whether his beliefs are religious in nature and sincerely-held would necessarily require further explanation of those beliefs.  The situation is no different where, as is the case here, Plaintiff professes to

observe "Biblical Christianity" and to "live in accordance with the Holy Bible."  Instead of

presuming that the Court understands which version of the "Holy Bible" is the source of

Plaintiff's religion and what his precise beliefs are, Plaintiff must explain the *specific*

*religious beliefs* he purports to hold.  Mere reference to the Holy Bible is uninformative, as

"Christian Bibles range from the sixty-six books of the Protestant canon to the eighty-one

books of the Ethiopian Orthodox Church canon."[6]  *See Baker v. Buckner*, No. 11-cv-01374-

REB-KLM, 2012 WL 2524029, at * 7 (D. Colo. May 15, 2012) (holding that possession of

a Holy Bible and Holy Quran alone failed to identify Plaintiff's religion or appropriately allege

a sincerely-held belief).  As far as the Court can determine, Plaintiff's sole reference to a

particular belief is to "the Seven-Day Sabbath," but he provides no further detail. *2nd Am.*

*Compl.* [#25] at 9.  This lack of explanation leaves the Court to guess whether Plaintiff

simply believes he should have no non-religious obligations on Sundays, or something

more.  Plaintiff's statement that turning in his linens on Saturday morning conflicts "with the

Seven-Day Sabbath and part of [his] religious beliefs" is even more confusing.  Without

precise identification of Plaintiff's purported beliefs, the Court is in no position to assess

whether they are religious in nature and sincerely-held.  Mere reference to Christianity and

---

[6]  *Biblical Studies: Too Many Bibles*, DEPARTMENT OF CHRISTIAN EDUCATION: ORTHODOX CHURCH IN AMERICA, http://dce.oca.org/resource/272/ (describing the different versions of the Bible from the Older Translations to the New American Standard Bible); Taylor, Larry A., *The Canon of the Bible* (1999), http://socsci.gulfcoast.edu/rbaldwin/Canon%20of%20the%20Bible.htm ("[M]ost modern Protestants, and Protestant churches historically, accept exactly sixty-six books, thirty-nine books from Hebrew, which they call the Old Testament, and twenty-seven books written in Greek, which they call the New Testament. Protestants use and accept these books; therefore, there are sixty-six books in the Protestant Canon."); Ababa, Addis, *A short history, faith and order of the Ethiopian Orthodox Tewahido Church*, ETHIOPIAN ORTHODOX TEWAHIDO CHURCH HOLY SYNOD (1983), http://www.ethiopianorthodox.org/ english/canonical/ books.html ("The Ethiopian Orthodox Church has 46 books of the Old Testament and 35 books of the New Testament [which brings] the total of canonized books of the Bible to 81.").

the Holy Bible does not suffice to establish that Plaintiff's beliefs are religious in nature, any more than mere reference to *Mastering the Art of French Cooking* would suffice to establish that Plaintiff eats only haute French cuisine.

The Court is well aware of the line of cases suggesting that the inquiry into the sincerity of a plaintiff's religious beliefs is almost exclusively a credibility assessment, and therefore the issue of sincerity can rarely be determined on summary judgment, let alone a motion to dismiss.  *Kay*, 500 F.3d at 1219 (citing *Snyder*, 124 F.3d at 1352-1353 (internal quotation omitted)).  These cases stand for the conclusion that summary dismissal on the sincerity prong is appropriate only in the "very rare case[]" in which the plaintiff's beliefs are "so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection."  *Snyder*, 124 F.3d at 1353 (internal quotation omitted).  But these cases also *presume* the Court's understanding of the plaintiffs' particular religious beliefs, an understanding that is lacking here. There are a variety of religions that go by the name of "Christianity," and those religions contain a variety of beliefs.[7]  At a minimum, in order to demonstrate that his beliefs are religious in nature and sincerely held, Plaintiff *must tell the Court what they are*.  Assessment of Plaintiff's allegations regarding denial of his First Amendment rights cannot be made unless he does so.

Plaintiff has not done so here.  Instead, he has referred to one purported belief,

---

[7]  *Global Christianity*, PEWFORUM.ORG, at *95, http://www.pewforum.org/files/2011/12/ ChristianityAppendixB.pdf (estimating approximately 41,000 Christian denominations worldwide). The Pew Forum from the Center for the Study of Global Christianity (CSGC) at Gordon-Conwell Theological Seminary in South Hamilton, Mass obtained membership information from 41,000 Christian denominations.  This number is the global sum of the total number of denominations in each country.  *See also, Global Christianity*, PEWFORUM.ORG, at *Defining Christian Traditions, http://www.pewforum.org/2011/12/19/global-christianity- traditions/#defining (describing the tenets of the largest Christian denominations).

failed to provide any explanation of what it means, and made conclusory allegations that Defendant has denied him religious freedom without identifying which of his specific beliefs have been compromised.  More specifically, Plaintiff alleges that he sought permission to practice his unspecified beliefs, attempted to receive a church hymnal sent to him by the Church of God, and refused to work on Holy Sabbath days. *2nd Am. Compl.* [#25] at 9-11. However, the Second Amended Complaint makes little more than conclusory allegations regarding violation of Plaintiff's religious rights, the dates of denials of Plaintiff's persistent requests for permission to observe his purported religious beliefs without hindrance, and alleged retaliatory acts against Plaintiff for refusing to work on "Holy Sabbath days."  *See id.* at 3, 9-10; *Vigil v. Jones*, No. 09-cv-01676-PAB-KLM, 2010 WL 3703582, at *6 (D. Colo. Aug. 9, 2010), *aff'd in part*, *vacated in part on other grounds*, 2011 WL 1518660 (D. Colo. 2011) (holding that the combination of plaintiff's unfamiliar religion and "conclusory allegations regarding 'violations of [Plaintiff's religious] rights,' the dates of denials of Plaintiff's requests for facility recognition of 'Judeo-Christianity,' and denials of permission to attend prison-sponsored religious observances" created ample doubt about whether Plaintiff was motivated by a sincerely-held religious belief).  Nowhere does Plaintiff mention when he became a "Biblical Christian," explain the extent of his knowledge about the faith, explain a list of its central tenets or his worship rituals, or assert that family, friends, or fellow inmates have observed him practice.  *Ochoa v. Connell*, No. 9:05-cv-1068 (GLS/RFT), 2007 WL 3049889, at *7 (N.D.N.Y. Oct. 18, 2007) (holding sincerity not sufficiently alleged where plaintiff provided no information regarding his religious beliefs, types of prayers, worship rituals, or the importance of the particular prayers in his life).

As indicated above, the requirement that a plaintiff demonstrate sincerely-held

beliefs mandates Court scrutiny of the precise allegations made by a prisoner about his religion.  While the Court recognizes the general presumption that the sincerity of a plaintiff's beliefs can rarely be determined at the motion to dismiss stage, the law requires more than reciting the name of one's religion and its accompanying holy text.  The plaintiff must provide some enumeration of the tenets of his belief system along with allegations as to which specific beliefs have allegedly been violated by the defendants' actions.  *Baker*, 2012 WL 2524029, at *9 (explaining that to sufficiently plead a "sincerely-held belief" under the First Amendment, the plaintiff must specifically identify his religion and explain his beliefs)*; Santana v. Aviles*, No. 11-261 (FSH), 2011 WL 6002260, at *5 (D.N.J. Nov. 30, 2011) (holding that the plaintiff failed to sufficiently plead a "sincerely held religious belief" where the complaint merely asserted that he was "denied the right to practice religious freedoms to attend church service" but never mentioned what his religious beliefs were or how the defendant interfered with his exercise); *Ochoa*, 2007 WL 3049889, at *7 (holding that the plaintiff failed to sufficiently plead a "sincere" belief to support his First Amendment claim where he provided no information about the nature and content of his beliefs, how he came to hold them, his participation in specific rituals, or the importance of particular prayers).  Plaintiff's generic allegations that he lives "in accordance with the Holy Bible" provide no specificity about what he believes or which particular beliefs were violated.  Nor does he allege any facts supporting his contention that he is motivated by a "sincerely-held religious belief."  Accordingly, the Court finds that Plaintiff has not sufficiently alleged that he is motivated by a sincerely-held religious belief for purposes of his First Amendment claim.

Because Plaintiff fails to sufficiently plead the sincerity of his beliefs, he has failed

to sufficiently allege violation of a clearly-established constitutional right, and Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim for monetary damages for violation of the First Amendment.   It is unnecessary to consider the second prong of the qualified immunity analysis.   *See Saucier*, 533 U.S. at 201.   Pursuant to Fed. R. Civ. P. 12(b)(6), the Court **recommends** that the First Amendment individual capacity claim for monetary relief against all Defendants be **dismissed without prejudice**.   *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).   Qualified immunity does not protect Defendants from Plaintiff's First Amendment official and individual capacity claims for injunctive and declaratory relief.

**2**.   **Sufficiency of Allegations Regarding Fourteenth Amendment Violation**

As a preliminary matter, Plaintiff incorrectly alleges that he was denied equal protection under the "Fifth" Amendment to the United States Constitution by CDOC, a state correctional facility.   The "Fifth" Amendment applies to actions taken by the federal government while the "Fourteenth" Amendment applies to actions taken by the state. Plaintiff is incarcerated in a state facility; hence, alleged illegal actions taken against him relating to the conditions of his confinement are state actions.   Because Plaintiff appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.   *See United States v. Walters*, 163 F. App'x 674, 678 (10th Cir. 2006).   Thus, the Court treats Plaintiff's pleading of an equal protection violation under the Fifth Amendment as his assertion of a Fourteenth Amendment equal protection violation.   *See Hardeman v. Stewart*, 195 F. App'x 706, 707 (10th Cir. 2006) (reading pro se Plaintiff's complaint liberally to include a non-pleaded claim under the equal protection clause).

Plaintiff alleges that while other inmates were allowed to practice their religions, Defendants' denial of Plaintiff's requests to recognize his faith and accommodate his right to freely exercise his beliefs constitute a violation of Plaintiff's Fourteenth Amendment equal protection rights.  Defendants move to dismiss the equal protection claim because Plaintiff does not allege any specific religious beliefs or name Defendants who personally participated in denials of religious objects.[8]

An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). Plaintiff bears the burden of alleging discriminatory intent; a plaintiff must provide allegations demonstrating that a discriminatory purpose was a motivating factor in the decision attacked by the complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, Plaintiff's allegations are conclusory generalizations that Defendants violated

---

[8]  Plaintiff alleges that he was denied a church hymnal on June 27, 2012 by Rae Timme, a former defendant who has been dismissed from the case. *2nd Am. Compl.* [#25] at 10. Plaintiff adds that "the Defendants were made aware of the problem, were in a position of authority to correct [Timme], but failed to take the reasonable steps to do so." *Id.* Construing these allegations liberally, the Court understands Plaintiff to assert that all remaining Defendants denied his Fourteenth Amendment rights.

his rights in relation to other inmates.  Plaintiff's Second Amended Complaint states that Defendants "repeatedly den[ied] him access to the objects necessary for him to freely worship" in accordance with his religion, "as others of differing faiths are permitted to do, without fear of discrimination or retaliation."  He further alleges that Defendants failed to "acknowledge and accommodate Plaintiff's sincerely held beliefs and faith group Biblical Christian as other faith groups have been."  However, Plaintiff has not alleged specific facts demonstrating that persons of different faiths were treated more favorably than he was or supporting his contention that Defendants acted with "purposeful discrimination" in denying his requests. *Vigil*, 2010 WL 3703582, at *9 (failing to state a claim because discriminatory motive was not sufficiently pled where Plaintiff alleged that Defendants denied requests to recognize his faith and participate in prison-sponsored religious observances).  Moreover, his Second Amended Complaint fails to allege any intent by Defendants to discriminate. Therefore, Plaintiff has failed to sufficiently allege violation of a clearly-established constitutional right, and Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim for monetary damages for violation of the Fourteenth Amendment.  Because Plaintiff fails to sufficiently allege a constitutional violation, it is unnecessary to consider the second prong of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201.  Accordingly, the Court **recommends** that Plaintiff's equal protection individual capacity claim for monetary relief against all Defendants be **dismissed without prejudice**.  *Reynoldson*, 907 F.2d at 127.   Qualified immunity does not protect Defendants from Plaintiff's Fourteenth Amendment official and individual capacity claims for injunctive and declaratory relief.

**D.     First and Fourteenth Amendment Claims for Injunctive and Declaratory Relief**

As stated above, Defendants are entitled to Eleventh Amendment immunity

regarding Plaintiff's official capacity claims for monetary relief.  *See supra* § III.A.

Defendants are also entitled to qualified immunity regarding Plaintiff's First and Fourteenth

Amendment individual capacity claims for monetary relief because Plaintiff has failed to

adequately allege either a First Amendment or a Fourteenth Amendment violation.  *See*

*supra* § III.C.  Eleventh Amendment immunity and qualified immunity only immunize

Defendants from claims for monetary relief.[9]  Plaintiff's remaining constitutional claims –

that is, First and Fourteenth Amendment official and individual capacity claims for injunctive

and declaratory relief – likewise fail because Plaintiff has failed to adequately allege a First

or Fourteenth Amendment violation.  *See supra* § III.C.; Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556

U.S. at 678.  Accordingly, the Court **recommends** that Plaintiff's First and Fourteenth

Amendment official and individual capacity claims for injunctive and declaratory relief

against all Defendants be **dismissed without prejudice**.  *Reynoldson*, 907 F.2d at 127.

E.     **RLUIPA**

Plaintiff alleges that by denying him a church hymnal and the ability to observe

"Biblical Christianity" without retaliation or punishment, Defendants violated his rights under

RLUIPA.[10]  *Response* [#31] at 3-4.  Plaintiff seeks permanent injunctive and declaratory

---

[9]  Plaintiff has the right to bring official capacity constitutional claims against Defendants for injunctive and declaratory relief only to "end a continuing violation of federal law."  *Green v. Mansour*, 474 U.S. 64 (1985); *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff alleges that Defendants continue to violate his First and Fourteenth Amendment rights by depriving him of a place to worship and a church hymnal. *2nd Am. Compl.* [#25] at 11-12; *see also Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.").  Therefore, Plaintiff alleges a "continuing violation of federal law." Accordingly, he may sue Defendants in their official capacities for injunctive and declaratory relief.

[10]  Plaintiff's Second Amended Complaint does not assert which section of RLUIPA Defendants allegedly violated, but because the Court construes the filings of a pro se litigant

relief against each of the named Defendants, ordering them to recognize "Biblical Christianity" as a religion, allow him a place for worship, respect his right to observe holy days and provide him with his religious objects.

RLUIPA does not permit a claim against individual defendants in their individual capacities. *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (stating that "there is no cause of action under RLUIPA for individual-capacity claims"). Furthermore, as stated above, the Eleventh Amendment prohibits Plaintiff from suing Defendants in their official capacities for monetary relief. *See supra* § III.A. However, under RLUIPA, Plaintiff may sue Defendants in their official capacities for injunctive and declaratory relief. *See Boles*, 402 F. Supp. 2d at 1240-1241.

The standards for stating a claim under RLUIPA are different from those under the Free Exercise Clause of the First Amendment. *Kay*, 500 F.3d at 1221. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers a "compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); *see also* 42 U.S.C. § 2000cc-3(g). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Cutter v.*

---

liberally, the Court finds Plaintiff's Second Amended Complaint to be alleging violations of 42 §§ U.S.C. 2000cc to 2000cc-5.

*Wilkinson*, 544 U.S. 709, 721 (2005) (*quoting Employment Div. Dept. of Human Res. of Ore v. Smith*, 494 U.S. 872, 877 (1990)).   RLUIPA applies in the prison context.   *See Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006); *Hammons v. Saffle*, 348 F.3d 1250, 1258 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).

To proceed with a RLUIPA claim, Plaintiff must demonstrate that he wishes to engage in (1) a religious exercise; (2) motivated by a sincerely held belief; and (3) such exercise is subject to a substantial burden imposed by the government.   *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).   The plaintiff bears the initial burden of establishing "the prima facie existence of such a substantial burden" on his religious exercise.   *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).   Bearing the elements of a RLUIPA claim in mind, RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."   42 U.S.C. § 2000cc-3(g); see Abdulhaseeb, 600 F.3d at 1316-1317 (prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise).

As stated above, Plaintiff alleges that he is a follower of "Biblical Christianity." Additionally, he alleges that his church group is the Church of God, his faith requires a church hymnal for proper worship and that bearing a burden on a Holy Sabbath day violates his religious beliefs. *2nd Am. Compl.* [#25] at 10 ("Plaintiff explained [to Defendant Toomey] that it would go against his religious beliefs and faith practices to bear a burden on a holy Sabbath day").   Unlike a First Amendment claim, RLUIPA bans an inquiry into

-24-

whether a plaintiff's alleged beliefs find any support in his religion's doctrine.[1]   Under RLUIPA, courts may not attempt to determine if the alleged beliefs comport with the doctrine of a plaintiff's stated religion, but rather must attempt to determine if the plaintiff *sincerely believes.  Abdulhaseeb*, 600 F.3d at 1316.  Determining whether Plaintiff sincerely believes, however, necessarily requires review of allegations regarding his specific beliefs.  Here, the Second Amended Complaint's mere allegations of the name of Plaintiff's religion and vague references to a church hymnal and the "Holy Sabbath" do not provide the Court with enough information to determine whether Plaintiff is sincere in his beliefs.  *See Bland v. Aviles*, No. 11-1792 (ES), 2012 WL 137783, at *6 (D.N.J. Jan. 18, 2012) (holding that the plaintiff did not sufficiently plead a "sincerely held religious belief" under RLUIPA where the complaint did not allege what his religious beliefs were or the name of his religion); *Gregorio v. Aviles*, No. 11-2771 (WJM), 2011 WL 5325671, at *6 (D.N.J. Nov. 3, 2011) (holding that the plaintiff did not sufficiently plead a "sincerely held religious belief" under RLUIPA where the complaint did not allege what his religious beliefs were or the name of his religion); *Catanzaro v. Michigan Dep't of Corr.*, No. 08-11173, 2008 WL 5273602, at *1, 3 (E.D. Mich. Dec. 17, 2008) (holding that the plaintiff had fallen far short of pleading a "sincerely held belief" where the court was presented with nothing other than his representation that he needed to remove his shirt in the prison yard in order to practice "sun meditation which is part of his [N]ative [A]merican spiritual beliefs."); *Vigil*, 2011 WL 1480679, at *4 (holding conclusory allegations regarding denial of rights and recognition

---

[11]   RLUIPA significantly departs from the law governing First Amendment Free Exercise claims, in which the Court can "consider whether the litigants' beliefs find any support in the religion to which they subscribe, or whether the litigants are merely relying [on] a self-serving view of religious practice."  *Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002).

of religion did not adequately demonstrate that the plaintiff's religious exercise was motivated by sincerely held belief).  Because Plaintiff does not more explicitly allege his religious beliefs, he fails to sufficiently plead sincerity under RLUIPA.

Accordingly, Plaintiff does not state a tenable claim for a RLUIPA violation in the Second Amended Complaint.  Pursuant to Fed. R. Civ. P. 12(b)(6), the Court **recommends** the RLUIPA claim against all Defendants in their official capacities for injunctive and declaratory relief be **dismissed without prejudice**.  *Reynoldson*, 907 F.2d  at 127.

## F.    Colorado Revised Statute § 17-42-101

Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims").  Here, subject matter jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See 2nd Am. Compl.* [#25] at 2.  There is no alternative diversity jurisdiction because all parties are citizens of the State of Colorado.  *See id.*  Thus, having recommended dismissal of Plaintiff's federal claims, the Court further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and that it be **dismissed without prejudice**.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-1230 (10th Cir. 2007).

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants'

**Motion** [#28] be **GRANTED** and that Plaintiff's Second Amended Complaint [#25] be **DISMISSED WITHOUT PREJUDICE**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  November 7, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge