IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00206-PAB-KLM

DAVID B. HOECK,

    Plaintiff,

v.

LANCE MIKLICH,
TED STENZEL,
DARRYL PROFFIT,
MARY TOOMEY,
LINDA WORTHEN,
SCOTT LANCASTER,
TOM JORDAN,
VALARIE CRAIG,
KEN TOPLISS,
J. STRICKLETT, and
MARY ANN ALDRICH,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 35]. The magistrate judge recommends that the Court grant the Motion to Dismiss [Docket No. 28] filed by defendants Lance Miklich, Ted Stenzel, Darryl Proffit, Mary Toomey, Linda Worthen, Scott Lancaster, Tom Jordan, Valarie Craig, Ken Topliss, J. Stricklett, and Mary Ann Aldrich. On December 20, 2013, plaintiff filed timely objections [Docket No. 42] to the Recommendation.[1] Therefore, the Court will "determine de novo any part of the

---

[1] In response to plaintiff's motion indicating that he was not initially served with a copy of the Recommendation, Docket No. 38, the Court extended the time for plaintiff

magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In light of plaintiff's pro se status, the Court reviews his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991).

Plaintiff is an inmate at the Colorado Territorial Correctional Facility ("CTCF") within the Colorado Department of Corrections ("CDOC"). Defendants work in various capacities at CTCF. The Recommendation sets forth the relevant background facts and the Court will not recite them here. *See* Docket No. 35 at 2-3.

## I. ANALYSIS

The magistrate judge found that defendants were entitled to qualified immunity on plaintiff's claim for violation of his First Amendment right to the free exercise of religion and that plaintiff failed to state a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, because plaintiff failed to sufficiently identify his purported religion and associated beliefs. Docket No. 35 at 13-26. Plaintiff objects to this finding on the basis that he filed a "list of items needed in practicing his sincerely held religious beliefs, along with practices and tenets of the Biblical Christian faith" in conjunction with his initial complaint and that this list sufficiently specifies the nature of his beliefs.[2] Docket No. 42 at 1 (citing Docket

---

to file a response. Docket No. 39.

[2]Plaintiff does not object to the magistrate judge's conclusions regarding defendants' Eleventh Amendment immunity from claims for damages; the running of the statute of limitations on a number of his allegations; or the dismissal of his Fourteenth Amendment claim. In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*,

2

No. 1 at 5-6).

A "pleading that has been amended under [Federal Rule of Civil Procedure] 15(a) supersedes the pleading it modifies." *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990) (internal citation omitted). A statement in a superseded complaint "may be adopted by reference elsewhere in the same pleading or in any other pleading or motion," Fed. R. Civ. P. 10(c), "but only if reference to allegations in the prior complaint is direct and specific." *Fullerton v. Maynard*, 1991 WL 166400, at *2 (10th Cir. Aug. 29, 1991).

In his second amended complaint, plaintiff requests the following relief: "Order Defendants to recognize and accommodate Plaintiff's faith group, Biblical Christian, equally with other faith groups and distinctly separate from all other faith groups. (List of faith group practices was included with the original Complaint filed in this case)." Docket No. 25 at 5, ¶ D.

Since plaintiff is pro se and directly and specifically refers in his second amended complaint to the list of religious practices filed in conjunction with his initial complaint, the Court will consider this list in ruling on plaintiff's objections to the Recommendation. *See Fullerton*, 1991 WL 166400, at *2; Fed. R. Civ. P. 10(c).

---

474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings"). In this matter, the Court has reviewed the portions of the Recommendation to which plaintiff does not object to satisfy itself that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Based on this review, the Court has concluded that these portions of the Recommendation correctly apply the facts and the law.

The list in question is entitled "Practices of the Church of God and faith group 'Biblical Christian'" and sets forth a list of twenty tenets of Biblical Christianity and accompanying requirements for practicing the faith. *See, e.g.*, Docket No. 1 at 5-6, ¶ 2 ("New year observance based upon the sighting of the new moon, as well as the barley in the head and the flax in the bud in Zion. Crop report should be posted in each living unit."); *id*. at ¶ 3 ("The seventh day Sabbath is observed from sunset Friday until sunset Saturday. We are required to refrain from ANY form of work and we may not have ANYONE do ANY work for us. Meals must be prepared and served prior to the Sabbath in disposable containers that we are allowed to bring with us to services, or to our living units. This is a day of feasting and double portion meals should be served throughout. All laundry, etc., must be done prior to the Sabbath or afterwards. We require a place to worship from sunrise to sunset, that is free of idols, images, pagans, etc."); *id*. at ¶ 7 ("The Feast of Trumpets begins on the first day of the seventh month at sunset, with the sighting of the first visible crescent moon in Zion. This is an annual Sabbath with the same requirements as the weekly Sabbath. Shofar required."); *id*. at ¶ 18 ("We would like to have access to musical instruments, cd player, cd of church hymns, Church of God Bible Hymnals, as we are required to make a joyful noise to the Lord."). The list explains that Biblical Christians are "required to live by every word that proceeds from the mouth of God" and "believe that only two laws have passed from the Holy Bible, which are animal sacrifice and circumcision of the flesh." *Id*. at 6, ¶ 11.

In addition, plaintiff alleges in his second amended complaint that (1) he obtained a religious diet from CTCF in fall 2008, Docket No. 25 at 8, ¶ 2; (2) he wrote to

various defendants regarding his religious beliefs in June 2010, *id*. at 8, ¶¶ 9-10; (3) in April 2011, he refused to turn in linens for laundering because doing so conflicted with his observance of the Sabbath, *id*. at 9, ¶ 12; (4) in June 2011, he requested that the canteen carry religious remedies, *id*. at 9, ¶ 13; (5) in March 2012, he refused to work on the Sabbath, resulting in his eventual termination from his work assignment, *id*. at 9, ¶ 15; (6) as of June 2013, he has been fasting every Sabbath "due to his inability to possess food items and the fact that CDOC and CTCF will not provide a diet for him consistent with his religious beliefs." *Id*. at 12, ¶ 34.

### A. First Amendment

In their motion to dismiss, defendants argue they are entitled to qualified immunity on plaintiff's First Amendment claim because plaintiff did not plausibly allege the nature or sincerity of his purported religious beliefs. Docket No. 28 at 10-11.

Qualified immunity shields government officials from claims for money damages absent a showing that (1) the official violated a constitutional right and (2) the right was "clearly established" at the time the challenged conduct occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In contrast to a standard motion for summary judgment–which places the burden on the moving party to demonstrate the lack of a genuine issue of material fact–a motion for summary judgment based on a claim of qualified immunity shifts the burden to the non-moving party. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013) (citation omitted).

Accordingly, a plaintiff opposing a motion for summary judgment on the basis of qualified immunity must carry a two-part burden. *Hobbs ex rel. Hobbs v. Zenderman*,

579 F.3d 1171, 1183 (10th Cir. 2009). First, he must show that "a 'favorable view' of the facts alleged show[s] the violation of a constitutional right." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009)). Second, he must show that the right violated was clearly established at the time of the defendant's actions. *Serna v. Colo. Dept. of Corrs.*, 455 F.3d 1146, 1150 (10th Cir. 2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

A constitutional right is clearly established for the purpose of qualified immunity if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (internal citation omitted). In other words, the "salient" question is whether "the state of the law" at the time of the defendant's challenged actions afforded "fair warning" that those actions were unconstitutional. *Hope*, 536 U.S. at 741.

"Ordinarily, [the Tenth Circuit requires] that for a rule to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (internal citation omitted). However, it is not necessary that prior cases evidence an identical set of facts. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

6

*Hope* "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Id.* The Tenth Circuit accordingly treats cases as lying along a spectrum: the more "obviously egregious" the conduct, "the less specificity is required from prior case law." *Id.* This approach requires government officials to make "reasonable applications of the prevailing law to their own circumstances." *Id.*

"Under the First . . . Amendment[ ], inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). To state a free exercise claim, an incarcerated plaintiff must first show that a prison regulation "substantially burdened [his] sincerely-held religious beliefs." *Id*. Consequently, "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." If the plaintiff satisfies this first inquiry, defendant prison officials must then "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations and footnote omitted). "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.'" *Id.* at 1218 n.2 (citation omitted). To determine the reasonableness of the regulation "[a]t that point, courts balance the factors set forth in *Turner* [*v. Safley*, 482 U.S. 78, 89-91 (1987.]" *Id.* at 1218-19.

### 1. Sincerely Held Religious Beliefs

In *Kay*, the Tenth Circuit held that a plaintiff met the first prong of a free exercise

claim where he alleged that (1) his religion was "Wicca"; (2) he "persistently asked prison administrators for permission to possess tarot cards in order to practice his religion"; (3) on "two occasions, he surreptitiously brought tarot cards into the [prison] and was disciplined for it." 500 F.3d at 1220. The court found that "Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity. Its practices include the use of herbal magic and benign witchcraft." *Id*. at 1219 n.5 (citing *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 400 (7th Cir. 2003)). The court concluded that "these facts evince some conviction on Kay's part to practice his faith with the use of tarot cards." *Id*. at 1220.

In *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999), the court held that the plaintiff had established the sincerity of his belief for purposes of summary judgment where he "submitted prison documentation that: (1) listed his religious preference as Jewish; (2) showed his participation in kosher meal programs in several other correctional facilities; and (3) showed that he had actually gone without food for several days to avoid eating non-kosher food."

In *Smith v. Bruce*, 568 F. Supp. 2d 1277, 1282 (D. Kan. 2008), the court denied summary judgment to defendants on a free exercise claim on the basis that the record contained sufficient "evidence that plaintiff was a practicing Muslin during his entire incarceration." Specifically, the court relied on evidence that the "chaplain authorized him to receive a vegetarian diet for religious purposes in December of 2003 . . . and the record does not reveal any departure from his practice of the Muslim faith, . . . since that time. Even when plaintiff was removed from the vegetarian diet, he continued to eat only beans and rice." *Id*.

In contrast, the court in *Ochoa v. Connell*, 2007 WL 3049889, at *7 (N.D.N.Y. Oct. 18, 2007), dismissed a free exercise claim where the plaintiff failed to "allege the nature and content of his beliefs, how he came to hold them, and what difference they have made in his life" and did not "describe his participation in other religious activities such as Sabbath observances, dietary strictures, religious meetings, holy feast days, or other significant religious activities to which he purportedly adheres."

Taking into account the list of religious practices incorporated by reference into plaintiff's second amended complaint, plaintiff's allegations are sufficiently specific to meet the first prong of a First Amendment free exercise claim. Plaintiff alleges that, as a Biblical Christian, he believes, *inter alia*, that (1) he must adhere to "every word" of the Christian Bible, with the exception of practicing animal sacrifice and "circumcision of the flesh," Docket No. 1 at 6, ¶ 11; (2) he is not permitted to perform any work–including laundry–on the Sabbath, nor is he permitted to have someone else perform such work on his behalf; (3) he must eat a double portion of food on the Sabbath; (4) he must observe a number of feast and holy days, including Passover, Pentecost, the Feast of Trumpets, the Day of Atonement, and the Feast of Tabernacles; (5) baptism should proceed by full-water immersion; and (6) he cannot eat any animal that contains blood, was "strangled or that die[d] of itself" and he cannot eat fat or lard. *See* Docket No. 1 at 5-6. As in *Kay*, plaintiff alleges that he persistently requested religious items from prison administrators and that, in an attempt to adhere to the strictures of his faith, he incidently violated prison rules. *See* 500 F.3d at 1221. As in *Jackson*, he alleges that he has gone without food at times in order to avoid violating religious dietary laws. *See*

196 F.3d at 320; Docket No. 25 at 12, ¶ 34.  As in *Smith*, he alleges that he obtained a religious diet several years ago, upon his initial transfer to his current facility.  *See* 568 F. Supp. 2d at 1282.  Although he does not set forth "how he came to hold" his particular beliefs or "what difference they have made in his life," he does "describe his participation in other religious activities such as Sabbath observances, dietary strictures, religious meetings, holy feast days, [and] other significant religious activities to which he purportedly adheres."  *See Ochoa*, 2007 WL 3049889, at *7.

In sum, this is not one of those "very rare case[s] in which the plaintiff's beliefs are so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection."  *Kay*, 500 F.3d at 1219-20 (internal citation and alterations omitted).

Defendants do not "identify the legitimate penological interests that justified the [allegedly] impinging conduct," *id*. at 1218 (internal citation alterations omitted); *see generally* Docket No. 28, and thus the Court cannot conclude that, according to the facts alleged, defendants did not "substantially burden" plaintiff's "sincerely-held religious beliefs."  *See Gallagher*, 587 F.3d at 1069.

### 2.  Clearly Established

*Kay* clearly establishes that "enough factual support exists to rationally and plausibly conclude" that a plaintiff is a "sincere devotee" of a particular faith where the plaintiff alleges that he "persistently asked prison administrators for permission to possess" certain items "in order to practice his religion," that his request was denied, and that, on several occasions, he "surreptitiously" circumvented prison rules in order to

obtain such items and "was disciplined for it." *See* 500 F.3d at 1219-20. *Kay* is sufficient to put a reasonable prison official on notice that denying an inmate articles, prayer facilities, dietary and scheduling accommodations, or other forms of recognition necessary to practice his sincerely held religious beliefs could violate the First Amendment.

### 3. Personal Participation

Defendants argue that plaintiff fails to allege personal participation on the part of defendants Miklich and Stenzel. Docket No. 28 at 6.

In regard to defendant Miklich, plaintiff alleges that:

> On June 15, 2010, Plaintiff wrote to Lance Miklich regarding his religious beliefs, which he responded to on June 17, 2010 stating that Plaintiff needed to file an A.R. 800-1H, which was done immediately. This Defendant was made aware of the problems, was in a position of authority to correct them and failed to take the reasonable steps necessary to do so.

Docket No. 25 at 8, ¶ 9. Plaintiff further alleges that, "[o]n April 16, 2013 the Plaintiff filed his appeal of [placement on restricted privileges status] and on April 23, 2013 Major Lance Miklich upheld the decision stating, in part, 'discrepancies with your claims, the dates and other related information.'" *Id*. at 10, ¶ 26. In regard to defendant Stenzel, plaintiff alleges that:

> On June 22, 2010 Plaintiff wrote Ted Stenzel asking for the faith group Biblical Christian to be recognized by CDOC and CTCF. This defendant was made aware of what was needed by Plaintiff to properly follow the tenets of his faith and the problems he was facing, was in a position of authority to correct the problems and accommodate the Plaintiff's needs, but failed to take the necessary steps to do so.

Docket No. 25 at 8-9, ¶ 10; *see also id*. at 9, ¶ 16. Additionally, plaintiff alleges that defendant Stenzel was "assigned the task" of speaking with plaintiff "regarding a place

11

to worship, which was denied," and, on another occasion, told plaintiff that he could not help him with his citation for failure to work.  *Id*. at 10-11, ¶¶ 18, 29.

Section 1983 "imposes liability for a defendant's own actions" and thus "personal participation in the specific constitutional violation complained of is essential."  *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011).  Section 1983 does not provide for vicarious liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  A plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id*.; *see also Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (a plaintiff must "prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.").  "[A] supervisor's mere knowledge of his subordinate's conduct" is not sufficient to hold the supervisor liable under § 1983.  *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Simply put, there's no special rule of liability for supervisors.  The test for them is the same as the test for everyone else."); *Woodward v. City of Worland*, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992) ("merely asserting that the defendant 'should have known' of unconstitutional behavior on behalf of his or her subordinates without establishing an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior fails to allege the requisite scienter for § 1983 liability").  The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Stewart v. Beach*, 701 F.3d

1322, 1328 (10th Cir. 2012) (internal citation omitted).

Plaintiff alleges no more than "mere knowledge" on the part of defendants Miklich and Stenzel. See Docket No. 25 at 8, ¶¶ 9-10; *Schneider*, 717 F.3d at 767. These defendants may not be held liable under § 1983 simply because they were aware of plaintiff's alleged grievances and did not remedy them. *See id*. As plaintiff does not allege facts sufficient to establish that defendants Miklich and Stenzel violated the Constitution "by virtue of [their] own conduct and state of mind," they are entitled to qualified immunity on his First Amendment claim. *See Dodds*, 614 F.3d at 1198.

### B. RLUIPA

To prevail on a claim under RLUIPA, a plaintiff must demonstrate that he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, and such exercise (3) is subject to a substantial burden imposed by the government. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010). RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g). *See Abdulhaseeb*, 600 F.3d at 1316-17 (prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise); *Rowe v. Davis*, 373 F. Supp. 2d 822, 827 (N.D. Ind. 2005) (prisoner's pleading that a prison official prevented him from meeting with a religious leader of his own faith was sufficient to overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

Plaintiff objects to the magistrate judge's finding that plaintiff did not satisfy the second element. Docket No. 42 at 2. In assessing whether plaintiff sufficiently alleges

that his religious exercise is motivated by a sincerely held belief, the Court "must not judge the significance of the particular belief or practice in question. RLUIPA bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion. RLUIPA does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity." *Abdulhasseb*, 600 F.3d at 1314 n.6 (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quotations and citations omitted)).

At this juncture the Court does not determine the validity of Biblical Christianity as a religion or whether not changing linen on the Sabbath, obtaining a hymnal, obtaining a place of worship, not relocating to a different cell on the Sabbath, observance of a religious diet, and not reporting to work during feast days, *see* Docket No. 35 at 9-10, are central tenets of plaintiff's religious practice. Instead, the Court focuses on the allegations demonstrating the sincerity of plaintiff's alleged beliefs.

As explained above, plaintiff's allegations suggest that he has practiced Biblical Christianity for several years and has repeatedly requested official recognition of the religion, attempted to follow a special diet, and observed the Sabbath and other holy days even when threatened or punished for doing so. These allegations are sufficient to establish a sincerely held belief under RLUIPA. *See Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008) ("the duration of time over which [plaintiff] sought to have his dietary request accommodated, and the fact that he sought that accommodation primarily as an [Ordo Templi Orientis] member, clearly demonstrates that his beliefs were sincerely held. If [his] beliefs were not sincere, and if he wanted a non-meat diet for reasons other than his religious beliefs, he could have attempted to have his affiliation changed to one of the denominations whose members regularly received non-meat diets.");

*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (plaintiff's complaint was sufficient to establish the sincerity of his religious beliefs where he alleged that he was a "Christian" who believed that a "patient who professes a religion is entitled to be informed if the counselor is aware of a religious avenue within the patient's religion that will meet the appropriate therapy protocol," that he informed a Catholic patient that she could find a bereavement support group through her church, and that he was subsequently terminated from his graduate student field practicum for his "religious speech").

In their motion to dismiss, defendants do not advance any other basis for dismissal of plaintiff's RLUIPA claim. *See* Docket No. 28 at 7-8. Accordingly, there is no basis for dismissing this claim.[3]

### C.  State Law Claim

Plaintiff alleges that defendants have violated Colo. Rev. Stat. § 17-42-101 by "failing to accommodate Plaintiff's religious beliefs and needs according to his faith group, Biblical Christian. These Defendants have been made aware of the on-going problems, were in positions of authority to correct them, but have failed to take the reasonable steps to do so." Docket No. 25 at 4, ¶ 43.

Colo. Rev. Stat. § 17-42-101 provides, in part, that:

(1)  All persons who are confined to a correctional facility . . . shall have the right to worship according to the dictates of their consciences, and such

---

[3] Plaintiff fails to state an RLUIPA claim against defendants Miklich and Stenzel because he does not allege that they acted with a state of mind beyond negligence. *See Lowery v. Edmondson*, 528 F. App'x 789, 792 (10th Cir. 2013) (citing *Lovelace*, 472 F.3d at 194 ("simple negligence . . . does not suffice to meet the fault requirement under section 3 of RLUIPA")).

persons shall be afforded a reasonable opportunity to freely exercise their religious beliefs without fear of retaliation or discrimination for the free exercise thereof. The practice of religion by any particular sect may not be curtailed or prohibited unless such practices threaten the reasonable security interests of the correctional facility.

(2) Upon the request of any inmate, and to the extent practicable and consistent with reasonable security considerations, religious facilities shall be made available in a nondiscriminatory manner. . . .

(3) The [CDOC] shall permit access to objects of a religious nature where possession of such objects would not unduly burden the reasonable security interests of the correctional facility. Prison officials shall accord appropriate respect for sacred objects.

The magistrate judge recommends that plaintiff's state law claim be dismissed without prejudice for lack of subject matter jurisdiction. In light of the Court's rulings on plaintiff's federal claims, dismissal for lack of subject matter jurisdiction is not appropriate. Defendants do not advance any other basis for dismissal of plaintiff's state law claim. *See* Docket No. 28 at 10. Accordingly, the Court will not dismiss this claim.[4]

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 35] is ADOPTED in part. It is further

**ORDERED** that the Motion to Dismiss [Docket No. 28] filed by defendants Lance Miklich, Ted Stenzel, Darryl Proffit, Mary Toomey, Linda Worthen, Scott Lancaster,

---

[4]Although "a court may dismiss *sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged," *Hall*, 935 F.2d at 1110, such dismissals are "strong medicine, and should be dispensed sparingly." *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002). The Court concludes that *sua sponte* dismissal is not appropriate in this instance. This ruling does not reflect any substantive conclusions regarding the viability of plaintiff's state law claim.

Tom Jordan, Valarie Craig, Ken Topliss, J. Stricklett, and Mary Ann Aldrich is GRANTED in part and DENIED in part. Pursuant to the Eleventh Amendment, defendants are immune from suit for money damages in their official capacities. Plaintiff's claim against all defendants under the Fourteenth Amendment to the United States Constitution is dismissed without prejudice. Plaintiff's claims against defendants Lance Miklich and Ted Stenzel under the First Amendment and the Religious Land Use and Institutionalized Persons Act are dismissed. Plaintiff's claims against defendants Darryl Proffit, Mary Toomey, Linda Worthen, Scott Lancaster, Tom Jordan, Valarie Craig, Ken Topliss, J. Stricklett, and Mary Ann Aldrich under the First Amendment and RLUIPA survive. Plaintiff's claim against defendants Lance Miklich, Ted Stenzel, Darryl Proffit, Mary Toomey, Linda Worthen, Scott Lancaster, Tom Jordan, Valarie Craig, Ken Topliss, J. Stricklett, and Mary Ann Aldrich pursuant to Colo. Rev. Stat. § 17-42-101 survives.

DATED February 19, 2014.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge