IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00206-PAB-KLM

DAVID B. HOECK,

Plaintiff,

v.

LANCE MIKLICH,
TED STENZEL,
DARRYL PROFFIT,
MARY TOOMEY,
LINDA WORTHEN,
SCOTT LANCASTER,
TOM JORDAN,
VALARIE CRAIG,
KEN TOPLISS,
J. STRICKLETT, and
MARY ANN ALDRICH,

Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Injunctive Relief [Docket No. 54] filed by plaintiff David B. Hoeck. Mr. Hoeck is currently incarcerated in the Colorado Territorial Correctional Facility in Cañon City, Colorado. This case arises out of Mr. Hoeck's contention that defendant prison officials are substantially and unreasonably burdening his ability to practice his religion.

## I. BACKGROUND

Plaintiff's motion for injunctive relief, which consists of essentially one paragraph, states in pertinent part:

> Plaintiff has listed numerous practices and tenets of his faith, Biblical Christianity, which the Defendants are not allowing him to practice or observe. The Plaintiff hereby respectfully requests that this Honorable order [sic] grant him injunctive relief so that he may observe the Sabbaths and holy feast days at their proper time, that [Colorado Department of Corrections ("CDOC")] provide a place for worship on those days and appropriate meals throughout those days and that he be permitted to refrain from work on these Sabbaths and throughout each day of the holy feasts.

Docket No. 54 at 1. In addition, plaintiff submits an affidavit with his motion, in which he makes the following three specific complaints:

> 1. On March 31, 2014 the new moon was sighted, as well as the barley in the head and the flax in the bud, in Israel. This meant that the Passover was to be observed on April 13, 2014 at twilight. I notified the Defendants and there response was that CDOC does not recognize Biblical Christianity and that I would have to celebrate the Passover and feast of unleavened bread at the wrong times with the Messianic Judaism community. This is sin, which I must refrain from.
>
> 2. I purchased five Church of God Bible Hymnals, for the Church of God here, recently and the Defendants refused to allow me to have them initially. After I protested they allowed me to have them, but told me if I was to share them with the group of fellow believers, then I would be written a disciplinary report for Bartering. This is utter nonsense, other groups that are similarly situated here are allowed to share their group books and such during services.
>
> 3. I received a monetary gift from a member of the Church of God in Denver recently, which was refused by the Defendants and sent back to the remittur. Other inmates here have also received monetary gifts from their churches and church members, which were not returned. The Defendants have been very spiteful towards me and it will continue without injunctive relief from this Court.

Docket No. 54 at 2.

At the end of the affidavit, plaintiff generally requests that he "be afforded a place to worship on the proper days and times, meals in accordance with the Holy Bible, double portions and clean animals throughout each Sabbath and each day of the annual feasts." *Id*. He concludes by stating that he has "given the Defendants contact

information and websites to be able to know when the new moons are sighted, which would allow them about ten to twelve hours to notify the Biblical Christians." *Id*.

Defendants' response to plaintiff's motion argues that injunctive relief is unavailable because plaintiff seeks to remedy past harm and because plaintiff fails to set forth the basis for the requested relief with sufficient specificity. Docket No. 56.

In his reply brief, plaintiff describes when the Sabbath and certain holidays must be observed and how to determine when a new month, season, or year has begun according to the Biblical Christian calendar. Docket No. 57 at 1 ("The new months begin when the first visible crescent moon is sighted in Zion. The new year begins when the barley is sighted in the head and the flax in the bud. The year will begin with the sighting of the crops in these states and in conjunction with the sighting of the new moon.") (internal citations omitted). He states that he will be "denied the opportunity to observe" the Feast of Weeks, from May 31, 2014 through June 1, 2014, and "many other Sabbaths, both weekly and annual, that will be coming up." *Id*.

Plaintiff also states that he is not permitted to have a "holy convocation" with other members of his faith because defendants will not allow more than two inmates to meet in a cell unless the door is open and "meeting in the dayhall part of the cell house is not separating ourselves from the wicked." *Id*.

In addition, plaintiff states that defendants "do not provide Plaintiff with any food on the holy Sabbaths and have never done so" because they "refuse to provide food prepared in accordance with the laws of God." *Id*. He does not explain why the food currently being provided is inadequate. Instead, he states generally that there "are many items that are served in the dining hall daily that are not clean by the standards of

God" and that, if "there is a question about whether something is or is not clean, the answer is that we **must not take the chance**." *Id*. (emphasis in original). He also states that the food he requires for holy days

> **must be Biblically clean** and **it must be prepared and served prior to sunset,** in disposable containers. A cooler with ice to keep the perishable items safe, an abundant supply of hot water prepared before sunset, ability to bring our food to the place of worship, to have no one doing **any manner of work for us,** and the place of worship must be free of pagans and sinners.

Docket No. 57 at 3 (emphasis in original). Plaintiff states that he "can instruct the Defendants about individual items that may be served, appropriate meeting halls, when the holy days will need to be observed and other such things." Docket No. 57 at 2.

In conclusion, plaintiff requests "an injunction to put a stop to the Defendants [sic] actions and inactions." Docket No. 57 at 3.

## II. STANDARD OF REVIEW

Although plaintiff does not explicitly seek a preliminary injunction or cite the rule pursuant to which he seeks injunctive relief, defendants correctly interpret the motion as one seeking a preliminary injunction pursuant to Fed. R. Civ. P. 65(a). A preliminary injunction is not meant to "remedy past harm but to protect plaintiffs from irreparable injury that will surely result without [its] issuance" and "preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258, 1267 (10th Cir. 2005); *see also Hale v. Ashcroft*, 683 F. Supp. 2d 1189, 1197 (D. Colo. 2009) ("injunctive relief can only be obtained for current or prospective injury and cannot be conditioned on a past injury that has already been remedied"). "[C]ourts generally will refuse to grant injunctive relief unless plaintiff demonstrates that

there is no adequate legal remedy." Charles Alan Wright et al., 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed. 2014).

To obtain a preliminary injunction, a plaintiff must demonstrate four factors by a preponderance of the evidence: "(1) a likelihood of success on the merits; (2) a likelihood that [he] will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [his] favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

A movant must show that these four factors weigh heavily in his favor in order to obtain an injunction that (1) disturbs the status quo, (2) is mandatory rather than prohibitory, or (3) provides the movant substantially all the relief he could feasibly attain after a full trial on the merits. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). The Tenth Circuit has described the status quo as the "last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier*, 427 F.3d at 1260 (citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001)). "In determining the status quo for preliminary injunctions, th[e] court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id*.

An order granting an injunction must "state its terms specifically" and "describe in reasonable detail–and not by referring to the complaint or other document–the act or

acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). "[T]he degree of specificity with which plaintiffs must describe the injunctive relief requested becomes more exacting as the litigation progresses: the complaint need only be specific enough to satisfy our notice pleading standards", while "the motion for relief or proposed injunction must of course itself be specific enough to comport with Rule 65(d)." *Shook v. Bd. of Cnty. Comm'rs of County of El Paso*, 543 F.3d 597, 606 n.4 (10th Cir. 2008).

**III. ANALYSIS**

Plaintiff claims that defendants are violating (1) his right to the free exercise of his religion under the First Amendment; (2) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc to 2000cc-5; and (3) Colorado law providing freedom of worship to individuals confined in a correctional facility, Colo. Rev. Stat. § 17-42-101.

Under the First Amendment, a prison may not enforce a regulation that substantially burdens an inmate's exercise of his sincerely held religious beliefs absent a legitimate penological interest justifying the regulation. *Boles v. Neet*, 486 F.3d 1177, 1181-82 (10th Cir. 2007) (recognizing continuing application of standard set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78, 89 (1987), to free exercise claims brought by prisoners). This framework "seeks to balance prisoners' constitutional rights against the valid concerns of prison administrators." *Boles*, 486 F.3d at 1181.

RLUIPA is a more exacting standard, prohibiting laws or regulations that "impose a substantial burden on the religious exercise of a person residing in or confined to an

institution, . . . even if the burden results from a rule of general applicability," unless the government shows that imposing the rule on that person is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). *See generally Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014).

Under Colorado law, prisoners "have the right to worship according to the dictates of their consciences." Colo. Rev. Stat. § 17-42-101(1). "Upon the request of any inmate, and to the extent practicable and consistent with reasonable security considerations, religious facilities shall be made available in a nondiscriminatory manner." *Id*. at § 17-42-101(2). The Colorado Department of Corrections "shall permit access to objects of a religious nature where possession of such objects would not unduly burden the reasonable security interests of the correctional facility." *Id*. at § 17-42-101(3).

Plaintiff must meet a heightened burden because he seeks an injunction that (1) disturbs the status quo and (2) is mandatory rather than prohibitory. *Kikumura*, 242 F.3d at 955.

As defendants point out, each of the specific harms that plaintiff identifies in his affidavit occurred in the past. For example, plaintiff states he was not permitted to celebrate Passover this year. Docket No. 54 at 1-2. He also states that he was not permitted to possess five hymnals, but that defendants have since changed their policy and have allowed him to keep the books. *Id*. at 2. He states that defendants sent a monetary gift he received back to the sender. *Id*. These statements describe harm that is linked to a particular time period in the past, that is no longer occurring because

defendants have changed their policies, or that consisted of a discrete act that has been completed. Such past harm is not properly redressed through injunctive relief, especially since plaintiff does not state that legal remedies are insufficient. *See Schrier*, 427 F.3d at 1267; 11A Fed. Prac. & Proc. Civ. § 2944.

Moreover, the Court agrees with defendants that plaintiff's remaining statements about injunctive relief are too general to allow the Court to issue an injunction that meets the specificity requirements of Federal Rule of Civil Procedure 65(d). Plaintiff requests that he be "permitted to refrain from work on . . . Sabbaths and throughout each day of the holy feasts." Docket No. 54 at 1. Plaintiff identifies these feasts and Sabbaths in his reply brief, but, because the dates on which they take place vary depending on certain astrological and agricultural events, plaintiff cannot identify the dates in advance. Instead, plaintiff states that the information is available through various websites and provides three examples of such websites. However, this information is not specific enough for defendants to know which website to use to determine the feasts and Sabbaths and otherwise does not provide detailed information necessary to comply with Rule 65(d). Plaintiff also seeks an injunction to require defendants to provide "meals in accordance with the Holy Bible, [and] double portions and clean animals throughout each Sabbath and each day of the annual feasts." *Id*. These statements do not indicate the precise nature of the harm plaintiff claims to be suffering or anticipates suffering in the future, nor do they "describe in reasonable detail–and not by referring to the complaint or other document[1]–the act or acts" that

---

[1]According to the plain language of Rule 65(d)(1)(C), plaintiff's general assertion that he "has listed numerous practices and tenets of his faith, Biblical Christianity, which

plaintiff requests be "restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). For example, it is not clear what constitutes "work" from which plaintiff wishes to be exempt, what constitutes a "double portion" of food, which animals are "clean," and what place of worship would be adequate. Plaintiff states that he can "instruct the Defendants about individual items that may be served, appropriate meeting halls, when the holy days will need to be observed and other such things." Docket No. 57 at 2. However, it would be improper, and inconsistent with Rule 65(d), to base a preliminary injunction order on future directives from plaintiff. In light of this lack of specificity, even if the Court found all of plaintiff's allegations to be true, it could not grant injunctive relief because the resulting order would be impracticably vague. *See* Fed. R. Civ. P. 65(d); *Shook*, 543 F.3d at 606 n.4.

Plaintiff's lack of specificity regarding the relief he requests has another consequence that prevents him from showing a likelihood of success on the merits. Unless the defendants know what they may be required to do or not do to comply with an injunction, it is difficult for them to adequately respond to the question of whether their current practices serve a compelling governmental interest or are the least restrictive means to further that interest under the RLUIPA. *See Yellowbear*, 741 F.3d at 56-57. Moreover, without detailed information, the Court is not in a position to perform the balancing required under *Boles*, 486 F.3d at 1181-1182 ("the question of whether a prison regulation reasonably curtails constitutional rights requires close examination of the facts of each case, the specific regulation under review, and the

---

the Defendants are not allowing him to practice and observe," Docket No. 54 at 1, is insufficient.

alleged justifications for it”), or the evaluation of the state’s justifications under the RLUIPA. *See Yellowbear*, 741 F.3d at 59-60 (discussing strict judicial scrutiny). Although plaintiff may be able to provide such details in the future, his motion and his reply brief do not provide them at this point.

Since plaintiff has failed to establish a likelihood of success on the merits, the Court need not consider the other factors relevant to a motion for injunctive relief. *See RoDa Drilling*, 552 F.3d at 1208.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Injunctive Relief [Docket No. 54] filed by plaintiff David B. Hoeck is DENIED.

DATED August 27, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge