IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00206-PAB-KLM

DAVID B. HOECK,

Plaintiff,

v.

LANCE MIKLICH,
TED STENZEL,
DARRYL PROFFIT,
MARY TOOMEY,
LINDA WORTHEN,
SCOTT LANCASTER,
TOM JORDAN,
VALARIE CRAIG,
KEN TOPLISS,
J. STRICKLETT, and
MARY ANN ALDRICH,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment on Amended Complaint (Doc. 25)** [#90],[1] (the "Motion"). Plaintiff[2] filed a Response [#92] and

[1] "[#90]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] Plaintiff proceeds in this matter as a pro se litigant. The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

a Surreply [#95], and Defendants filed a Reply [#94] and a Supplemental Reply [#99].[3] The Court has reviewed the briefing on the Motion, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#90] be **GRANTED in part and DENIED in part**.

## I. Summary of the Case[4]

Plaintiff is presently incarcerated at the Sterling Correctional Facility but was incarcerated at the Colorado Territorial Correctional Facility ("CTCF") during the period relevant to his claims. *Motion* [#90] at 3; *Surreply* [#95] at 1. Defendants were employed by the Colorado Department of Corrections ("CDOC") at CTCF during the relevant periods. *Id.* Defendant Lance Miklich ("Miklich") was the Major of Programs, Defendant Ted Stenzel ("Stenzel") was the Captain of Programs, Defendant Darryl Proffit ("Proffit") was the Regional Coordinator of the Faith & Citizen Program, and Defendant Linda Worthen ("Worthen") was the Lieutenant of the Faith & Citizen Program. *Second Am. Compl.* [#25]

---

[3] The Court explicitly allowed for the filing of the Surreply and Supplemental Reply. *Minute Order* [#98].

[4] The Court construes the evidence in a light most favorable to the nonmovant, i.e., the plaintiff here. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). Pursuant to 28 U.S.C. § 1746, Plaintiff swears to his Second Amended Complaint [#25] under penalty of perjury, and thus this document may be treated as an affidavit and used as evidence on summary judgment. *See Pacheco v. Timme*, No. 11-cv-02530-RM-KLM, 2014 WL 2442111, at *4 n.2 (D. Colo. May 30, 2014). However, Plaintiff must provide more than conclusory or vague statements in order to create a genuine issue of material fact with respect to Defendant's otherwise undisputed facts. *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that "mere conjecture" is an insufficient basis for denial of summary judgment). The Court therefore does not include such statements in this recitation of facts, even if Plaintiff "disagrees" with Defendant's facts, unless Plaintiff directs the Court's attention to evidence in the record which otherwise supports his "disagreements." Finally, the Court also notes that it disregards all statements consisting of legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the facts are otherwise undisputed, the Court refers only to the parties' briefing demonstrating that they are uncontested.

at 2, 6-7. Plaintiff asserts that Defendants Miklich, Stenzel, Proffit, and Worthen were "responsible for enforcing and implementing policies and procedures concerning religious rights at CTCF and for making allowances to meet the offender[s'] needs regarding their religious beliefs." *Id.*

Defendant Mary Toomey was the "Cell house Seven move sergeant" and was formerly the head of housekeeping. *Id.* at 7. She was "responsible for enforcing and implementing policies and procedures concerning religious rights at CTCF and for assigning cells and overseeing cellhouse porters, laborers and painters." *Id.* Defendant Scott Lancaster ("Lancaster") was "Maintenance 11 at CTCF and was responsible for overseeing Plaintiff as a maintenance worker." *Id.* Plaintiff states that Defendant Lancaster was in "a position of authority to give the Plaintiff the days off for religious observation . . . ." *Id.* Defendant Tom Jordan was Plaintiff's Case Manager and was "responsible for overseeing offenders at CTCF and for making allowances to meet the offender's needs regarding their religious beliefs." *Id.* Defendant Valarie Craig was the Disciplinary Officer and was "responsible for enforcing and implementing policies and procedures concerning [Code of Penal Discipline ("COPD")] infractions at CTCF." *Id.* Defendant Ken Topliss was the Hearings Officer and was "responsible for enforcing and implementing polices and procedures concerning COPD infractions at CTCF and for determining an offender's guilt after listening to the evidence." *Id.* at 7-8. Defendant J. Stricklett ("Stricklett") was a Sergeant for maintenance and was "responsible for overseeing maintenance workers under his supervision at CTCF and for making allowances to meet the offender[s'] needs regarding their religious beliefs." *Id.* at 8. Defendant Mary Ann Aldrich was the "Legal Liaison and Warden's Designee" and was "responsible for overseeing the enforcing and

implementing of policies and procedures concerning religious rights and COPD infractions at CTCF and for making allowances to meet the offender[s'] needs regarding their religious beliefs." *Id.*

Plaintiff follows the faith of Biblical Christianity. *Motion* [#90] at 3; *Surreply* [#95] at 1. Pursuant to Administrative Regulation ("AR") 800-01(IV)(C), CDOC has a system by which offenders can seek recognition of religious beliefs for purposes of religious accommodations. *Id.* To obtain recognition of beliefs and accommodations, an offender must identify a governing body for the desired religion and complete AR Form 800-01H. *Id.* In 2010, Plaintiff informally asked CDOC to recognize Biblical Christianity as a CDOC-approved faith. *Id.* Plaintiff was advised to submit AR Form 800-01H. *Motion* [#90] at 3-4; *Surreply* [#95] at 1.

AR 800-01E lists the religions and faith groups recognized by CDOC. *Motion* [#90] at 4; *Surreply* [#95] at 1. Pursuant to AR 800-01(III)(AA), "[a] grouping of approved faith groups sharing similar practices and beliefs who may worship at the same time, in the same location" is considered an "Umbrella Faith Group." *Id.* Pursuant to AR 800-01 (IV)(5)(d), "[o]ffenders of the same faith group or umbrella faith group . . . should be permitted to gather for holy day observances within allowable safety and security policies." *Id.* Effective January 1, 2014 (i.e., after this lawsuit was filed), Biblical Christianity was recognized by CDOC and placed within the Messianic Believers umbrella faith group. *Id.* Other religions under this umbrella are Christian Identity, Messianic Jewish, Judeo-Christianity, and Hebrew Christian. *Id.* Those identifying with one of the faiths under the umbrella of Messianic Believers are able to participate in religious activities as regulated under AR 800-01E. *Id.* Activities in which Messianic Believers may participate

include a Kosher diet, Passover, and work proscription days. *Id.*

Plaintiff has requested biblically-clean foods. *Motion* [#90] at 5; *Surreply* [#95] at 1. Plaintiff has also requested that he receive larger portions of food on the holy days and throughout holy feasts. *Id.* Pursuant to prison policies, Messianic Believers may obtain communal worship "property" such as grape juice and matzo. *Motion* [#90] at 4; *Surreply* [#95] at 1. On April 13, 2014, Plaintiff requested matzo and grape juice for Passover, but the request was denied by Defendant Linda Worthen ("Worthen"). *Motion* [#90] at 7; *Surreply* [#95] at 3. She advised Plaintiff that in 2014 Passover began on April 14 and not on April 13, as he had requested. *Motion* [#90] at 8; *Surreply* [#95] at 3.

An offender participating in work proscription days must give notice to his work supervisor in advance. *Motion* [#90] at 6; *Surreply* [#95] at 2. On April 10, 2013, Plaintiff was terminated from his work assignment for "Failure to Work." *Id.* The days he missed work (3/13/13, 3/28/13, 3/29/13, 4/3/13, 4/9/13, 4/10/13) were not recognized as work proscription days for offenders whose faiths are regulated under the Messianic Believer umbrella.[5] *Motion* [#90] at 6; *Surreply* [#95] at 2. On April 30, 2013, Plaintiff's termination was finalized after he was found guilty of a COPD infraction based on the testimony of Defendants Stricklett and Lancaster that Plaintiff had not discussed missing work ahead of time with either one of them. *Motion* [#90] at 6; *Surreply* [#95] at 2. Plaintiff appealed the disciplinary infraction ruling, which was later reversed due to procedural errors. *Motion* [#90] at 7; *Surreply* [#95] at 2. Plaintiff was placed on "Restricted Privileges" status based on his failure to work, although it is unclear precisely how long he remained on this status.

[5] Plaintiff repeatedly uses the term "Messianic Judaism" in his submissions but appears to be referring to the Messianic Believer umbrella. *See, e.g.*, *Surreply* [#95] at 2,3.

*Id.*; *see also Second Am. Compl.* [#25] at 10-11 (stating that on April 12, 2013, Plaintiff was placed on Restricted Privileges status for a minimum of ninety days, but given later events, it is unclear whether he was on this status for that length of time).

The following claims remain in this action: (1) denial of the right to free exercise of religion under the First Amendment, against all Defendants except Defendants Miklich and Stenzel; (2) violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), against all Defendants except Defendants Miklich and Stenzel; and (3) violation of Colo. Rev. Stat. § 17-42-101, against all Defendants.[6] *See generally Second Am. Compl.* [#25]; *Order* [#47] at 17.

**II. Standard of Review**

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

---

[6] To the extent that Plaintiff may be attempting to assert claims not previously asserted, the Court notes that Plaintiff may not do so for the first time in response to a motion for summary judgment. *See Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2015 WL 1499864, at *1 (D. Colo. Mar. 27, 2015) (stating that "claims not pleaded specifically in an operative complaint are not preserved for ultimate presentation to a trier of fact") (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087,1091 (10th Cir. 1991) ("We do not believe, however, that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case."); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001) ("'[W]e do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery.'") (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> >
> > ...
>
> (3) Materials Not Cited. The court need consider only the cited materials, but

> it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

In the present context, the United States Supreme Court has stated that the Court must draw "all justifiable inferences" in favor of the incarcerated, nonmovant plaintiff. *Beard v. Banks*, 548 U.S. 521, 529 (2006). "In doing so, however, we must distinguish between evidence of disputed facts and disputed matters of professional judgment." *Id.* at 530. "In respect to the latter, our inferences must accord deference to the views of prison authorities." *Id.* "Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Id.*

## III. Analysis

### A. First Amendment

"[I]nmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *Tennyson v. Carpenter*, 558 F. App'x 813, 817 (10th Cir. 2014) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). However, "legitimate penological interests may nonetheless justify a limitation on religious exercise." *Id.* Therefore, "what constitutes a reasonable opportunity [by a prisoner to pursue his religion] must be evaluated with reference to legitimate penological objectives." *Stewart v. Beach*, 701 F.3d 1322, 1331 (10th Cir. 2012) (citation omitted). Thus, the test applied in the First Amendment context is not whether there is any burden on an inmate's chosen religious practices, but only whether the burden is reasonable when limited by

legitimate penological objectives. *See id.*

The Court makes a two-step inquiry when adjudicating a free exercise claim by a prisoner-plaintiff. *Kay*, 500 F.3d at 1218. First, the plaintiff must demonstrate that his sincerely-held religious beliefs were substantially burdened by a prison regulation.[7] This inquiry asks whether the plaintiff's beliefs are religious in nature and are sincerely held. *Id.* If the plaintiff survives the first inquiry, prison officials must identify the legitimate penological interests which justify the impinging conduct. *Id.* As part of this element, the plaintiff has the burden of demonstrating that "these articulated concerns are irrational." *Id.* at 1218 n.2; *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (distinguishing prison regulations from other laws alleged to violate fundamental constitutional rights and stating that the former must be judged under a less restrictive reasonableness test).

The Court's duty is to determine the reasonableness of the regulation at issue by examining four factors under *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).[8] *See Kay*, 500 F. 3d at 1218-19 (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). First, the Court examines whether a rational connection exists between the prison regulation and the

---

[7] This same test applies not only to prison regulations, but also to the individual actions of prison officials. *See Boles v. Neet*, 486 F.3d 1177, 1181 n.4 (10th Cir. 2007).

[8] The Tenth Circuit Court of Appeals has noted:

> There may be an unresolved tension between *Turner v. Safley*, 482 U.S. 78 (1987), which holds that an interference with a prisoner's free exercise in the prison context is unconstitutional if it is not "reasonably related to legitimate penological interests," and *Employment Division v. Smith*, 494 U.S. 872 (1990), which holds that the Free Exercise Clause is not offended by neutral rules of general applicability. . . . In *Boles*, we acknowledged that "[t]his court has yet to address the issue squarely," and left it for another day. *Boles*, 486 F.3d at 1181.

*Kay*, 500 F.3d at 1219 n.3.

legitimate governmental interest advanced as its justification. *Kay*, 500 F. 3d at 1219. The connection cannot be so remote as to render the regulation arbitrary or irrational. *Turner*, 482 U.S. at 89-90. Second, the Court examines whether alternative means of exercising the right are available notwithstanding the regulation. *Kay*, 500 F. 3d at 1219. The alternatives, if they exist, require "a measure of judicial deference" to the expertise of prison officials. *Turner*, 482 U.S. at 90. Third, the Court examines what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally. *Kay*, 500 F. 3d at 1219. The impact, if substantial, requires "particular[ ] deference" to corrections officials. *Turner*, 482 U.S. at 90. Fourth, the Court examines whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Kay*, 500 F. 3d at 1219. The existence of a ready alternative which fully accommodates the inmate's rights with de minimus impact on valid penological interests is evidence of unreasonableness. *Turner*, 482 U.S. at 90-91.

"[T]he first *Turner* factor is actually more of an element than a factor in the sense that it is not simply a consideration to be weighed but rather an essential requirement." *Boles*, 486 F.3d at 1181 (internal quotation marks omitted). However, the Ninth Circuit Court of Appeals has held that, while the first factor is a requirement, the other three factors must also be analyzed to determine the reasonableness of a prison regulation. *Rogers v. Giurbino*, __ F. App'x __, __, 2015 WL 5091827, at *2 (9th Cir. Aug. 31, 2015). Only if the first factor is not met can the other three factors be ignored, because in that instance the policy is unconstitutional. *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 646 (6th Cir. 2015).

In support of this claim, Plaintiff alleges the following unconstitutional conduct: (1)

deprivation of appropriate meals on holy days;[9] (2) lack of an appropriate place for worship; (3) failure to recognize Biblical Christianity as an independent faith group (apparently, outside of the Messianic Believer umbrella); and (4) requiring Plaintiff to work on the Sabbath. *Second Am. Compl.* [#25] at 3, 9. In the Motion, Defendants do not contest the first element of Plaintiff's free exercise claim, i.e., that Plaintiff's sincerely-held religious beliefs were substantially burdened by a prison regulation. *See Motion* [#90] at 9. Therefore, the Court begins its examination with the second element regarding the existence of legitimate penological interests.[10]

Defendant asserts the following as legitimate penological interests: (1) requiring offenders to follow prison rules and regulations; (2) maintaining order within the prison facility; (3) requiring an offender to follow the Administrative Regulations when requesting that CDOC approve a specific religion or faith-based group; (4) requiring that offenders notify a job supervisor that they will be observing a particular religious day or event that is in conflict with a work shift; (5) limiting religious diets and religious accommodations to those that are approved; (6) requiring that offenders follow guidelines in requesting diets and accommodations related to religion.[11] *Motion* [#90] at 10-11. As the movants, Defendants must provide sufficient justification for the interests they have advanced in

---

[9] This appears to include Plaintiff's request that the prison canteen offer for sale certain unspecified holistic remedies. *See Second Am. Compl.* [#25] at 9; *Order* [#47] at 5.

[10] Defendants appear at times to confuse the two inquiries. Because Defendants conceded (for purposes of the Motion) the first inquiry, the Court does not examine further whether the infringement of Plaintiff's exercise of religion is substantial or minimal. *See Kay*, 500 F.3d at 1218. Rather, the Court examines whether the infringement is reasonably supported by legitimate penological interests, regardless of its severity. *See id.*

[11] The Court notes that some of these are broadly-stated interests which may include some of the more specifically-worded interests.

support of their actions to bring those actions within *Turner*'s scope. *Beard v. Banks*, 548 U.S. 521, 533 (2006).

Plaintiff's Response [#92] primarily argues that Defendants do not permit him to exercise precise components of his religion. Yet, as noted, Defendants are under no obligation to do so *as long as* legitimate penological interests are served by any infringement on Plaintiff's exercise of his religion. *Tennyson*, 558 F. App'x at 817. Beyond Plaintiff's broad assertion that he is not permitted to fully exercise his religious beliefs as he deems appropriate, he has not directed the Court's attention to any evidence that any of the asserted penological interests are per se irrational. *See Kay*, 500 F.3d at 1218 n.2. The Court therefore must balance the four *Turner* factors to determine the reasonableness of the regulations. *See id.* at 1218-19.

Unfortunately, neither party adequately addresses the *Turner* factors in the briefs.[12] While not required to do so, the Court has independently examined the parties' evidence. However, neither party appears to provide evidence regarding the second, third, or fourth *Turner* factors, and even the first element is at most only vaguely supported by the record. Although Defendants' asserted justifications may seem facially reasonable, the Court will not cobble together their arguments and canvass the evidence for the parties.[13] *See Cross*

---

[12] While both parties note that the Court must balance the factors articulated by *Turner* and even list those factors, *see Motion* [#90] at 9; *Response* [#92] at 2; *Reply* [#94] at 5-6, neither party discusses the factors in such a way that permits the Court to examine them without creating its own arguments and finding its own evidentiary support for them in the record, if such evidence exists.

[13] The Court notes that "general or vague statements about security are not sufficient to justify the denial of constitutional rights." *Jenner v. Sokol*, No. 11-cv-01497-RBJ-KMT, 2013 WL 500400, at *6 (D. Colo. Feb. 11, 2013) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 207 (1985) ("It is the business of prison officials, of course, to maintain order within their institutions. But this fact does not support a claim that every step taken to protect constitutional rights of prisoners will lead to a breakdown in institutional discipline and security. Routine and automatic arguments to this effect have been made before and have been rejected by this Court.")). "It is critically important

*v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004); *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000); Fed. R. Civ. P. 56(c)(3). Defendants must demonstrate the absence of a genuine issue of material fact regarding their legitimate penological interests by providing "depositions, answers to interrogatories, admissions, affidavits and the like" supporting the *Turner* factors, as opposed to mere argument. *See Beard*, 548 U.S. at 529. Application of the *Turner* factors in these types of cases is hardly a mystery, and it is unclear to the Court why the parties chose not to address them. *See, e.g.*, *Al–Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) ("Analysis of the four *Turner* factors is necessary at the summary judgment stage."). Given that Defendants have the burden to first provide sufficient justification for the interests they have advanced in support of their actions in order to bring those actions within *Turner*'s scope, *see Beard*, 548 U.S. at 533, the Court finds that Defendants have failed to demonstrate that there is no genuine issue of material fact here and that they are entitled to judgment as a matter of law. Accordingly, it is **recommended** that Defendants' Motion [#90] be **denied** to the extent they seek summary judgment on Plaintiff's claim under the First Amendment.[14]

---

then that the record reveal the manner in which security considerations are implicated by the prohibited activity . . . . [T]he governmental interest asserted in support of a restrictive policy must be sufficiently articulated to allow for meaningful review of the regulation in question and its effect on the inmate's asserted rights." *Jenner*, 2013 WL 500400, at *6 (quoting *Caldwell v. Miller*, 790 F.2d 589, 597-98 (7th Cir. 1986)).

[14] Defendants also assert qualified immunity with respect to this claim. *Motion* [#90] at 15-16. When defendants raise qualified immunity, the Court employs a two-step process. One part of the inquiry relates to whether the facts taken in the light most favorable to the plaintiff sufficiently assert a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established." *Id.* Here, although Defendants raise qualified immunity, they only present argument regarding the first step of the analysis, i.e., whether a constitutional violation has been properly asserted. *See Motion* [#90] at 16 (arguing that "Plaintiff fails to demonstrate the first prong of the qualified immunity analysis because the evidence fails to support any First Amendment claims against the Defendants"). This step is identical to the analysis just performed, in which the Court found that Defendants are not entitled to summary judgment as a matter of law. *See, e.g.*,

**B. RLUIPA**

RLUIPA allows prisoners to seek religious accommodations, but it "provide[s] greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 135 S. Ct. 853, 860-61, 862 (2015). According to RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc1(a). As the Supreme Court recently stated:

> Several provisions of RLUIPA underscore its expansive protection for religious liberty. Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc–3(g). And Congress stated that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." § 2000cc–3(c).

*Holt*, 135 S. Ct. at 860. RLUIPA is limited to official capacity claims for equitable relief. *Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015).

To succeed on a RLUIPA claim, a plaintiff must satisfy three elements: (1) the plaintiff wishes to engage in a religious exercise (2) that is motivated by a sincerely-held belief, and (3) such exercise is subject to a substantial burden imposed by the government.

---

*Banks v. Katzenmeyer*, No. 13-cv-02599-KLM, 2015 WL 1004298, at *25 & *25 n.8 (D. Colo. Mar. 4, 2015). Normally, the Court would next proceed to the second step of the qualified immunity analysis, i.e., whether Plaintiff's constitutional right was clearly established. *See Saucier*, 533 U.S. at 201. However, in light of Defendants' choice not to present argument regarding the second step, *see Motion* [#90] at 15-16, the Court need not reach this portion of the inquiry. *See, e.g.*, *In re C.W. Mining Co.*, 740 F.3d 548, 564 (10th Cir. 2014) ("Arguments raised in a perfunctory manner . . . are waived."). Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment claim.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010). For purposes of the Motion, Defendants concede the first two elements but argue that Plaintiff fails to meet the third element, as is his burden. *Motion* [#90] at 13; *Holt*, 135 S. Ct. at 862 ("In addition to showing that the relevant exercise of religion is grounded in a sincerely held religious believe, [the plaintiff] also bore the burden of proving that [the prison's] grooming policy substantially burdened that exercise of religion.").

The Supreme Court has recently directed the lower courts to avoid several potential pitfalls when determining whether an inmate has presented proof that exercise of his religion is subject to a substantial burden imposed by the government. *Holt*, 135 S. Ct. at 862 (stating that the lower courts should not "misunder[stand] the analysis that RLUIPA demands"). First, the Court does not use the same considerations examined with respect to prisoners' First Amendment rights, such as the *Turner* factors, because RLUIPA provides greater protection than does the First Amendment. *Id.*; *see also Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761-62 (2014) (stating that the "exercise of religion" under RLUIPA is independent of the definition of this phrase under First Amendment case law). For example, while "the availability of alternative means of practicing religion is a relevant consideration" under the First Amendment, "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt*, 135 S. Ct. at 862. Second, RLUIPA applies to an exercise of religion regardless of whether that exercise is compelled by the religion. *Id.* For example, the Supreme Court held that it was error to suggest "that the burden on [the inmate's] religious exercise was slight because . . . his religion would 'credit' him for attempting to follow his religious beliefs, even

if that attempt proved to be unsuccessful." *Id.* Third, the protection offered by RLUIPA is "not limited to beliefs which are shared by all of the members of a religious sect." *Id.* at 862-63. Thus, not all, or even most, adherents of a particular faith need have the same belief for it to be protected by RLUIPA. *Id.* at 862.

With these principles in mind, the Court examines the burdens placed on Plaintiff's exercise of religion. To the extent Plaintiff complains of having to change linens on the Sabbath, the uncontradicted evidence is that this occurred April 2011 through May 2012 and has not occurred since that time. *Second Am. Compl.* [#25] at 9. Further, to the extent Plaintiff complains of having to move cells on the Sabbath, the uncontradicted evidence is that this occurred on a single occasion, on October 2, 2012. *Id.* at 10. Given that RLUIPA is limited to equitable relief, *see Pfeil*, 603 F. App'x at 668, and given that these violations are not ongoing and appear to have occurred sometime in the past without repetition, any relief sought in connection with these events is moot because they do not presently place a substantial burden on Plaintiff's exercise of religion.[15] *See also Harris v. Avant*, No. 10-cv-00027-PAB-CBS, 2012 WL 1079318, at *1 (D. Colo. Mar. 29, 2012) (citing *Allan v. Woods*, No. 9:05-CV-1280 (NAM/GJD), 2008 WL 724240, at *7 (N.D.N.Y. March 17, 2008) ("[T]he fact that plaintiff had to work one half day on his Sabbath did not substantially burden the practice of his religion under RLUIPA."), (citing *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1232 (10th Cir. 2010) (stating that the plaintiff must demonstrate facts indicating an ongoing violation of federal law that would support prospective injunctive relief)).

---

[15] The Court makes no comment on whether such events, if ongoing or regularly recurring, would meet the third element of a RLUIPA claim.

To the extent Plaintiff complains of having to work on the Sabbath or other holidays, the Court finds that merely having to tell his work supervisor in advance that he will not be at work due to work proscription days is not a substantial burden. *See Motion* [#90] at 15 ("Plaintiff may participate in job proscription days so long as he notifies his supervisor in advance of his planned absence.") (citing Exs. A-1, AR 800-01(IV)(O)(6) [#90-1]; A-12 [#90-12]; A-13 [#90-13]; A-14 [#90-14]). Plaintiff does not argue to the contrary. However, here, there is a genuine issue of material fact relating to this claim, because Plaintiff asserts that even when he has notified his shift supervisors of his absence due to his religious beliefs, he has still been disciplined or fired for missing work. *Second Am. Compl.* [#25] at 11. If Plaintiff properly tells his shift supervisors that he will miss work for proscription days, and yet is still punished, this may be a substantial burden on his exercise of religion. *See Strope v. McKune*, No. 05-3464-SAC, 2009 WL 3052431, at *9 (D. Kan. Sept. 22, 2009) ("A substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." (internal quotation marks omitted; citations omitted)).

The evidence provided by the parties appears to indicate that this conflict between work and work proscription days occurred when Plaintiff missed work on consecutive days in late March and early April 2013 and when Plaintiff was removed from his job for failing to work on the Sabbath between March and July 2012. *Second Am. Compl.* [#25] at 9-10. Given that the evidence, seen in a light most favorable to Plaintiff, demonstrates that he lost his job twice in the eighteen months prior to the filing of Plaintiff's Second Amended Complaint in connection with work proscription days, the Court finds that Plaintiff has demonstrated a genuine issue of material fact regarding a substantial burden and that he

may be entitled to equitable relief in the form of an injunction.[16] *See, e.g.*, *Holt*, 135 S. Ct. at 862 ("The Department's grooming policy requires petitioner to shave his beard and thus to 'engage in conduct that seriously violates [his] religious beliefs.' If petitioner contravenes that policy and grows his beard, he will face serious disciplinary action. Because the grooming policy puts petitioner to this choice, it substantially burdens his religious exercise." (internal citation omitted)).

To the extent Plaintiff complains that the kosher diet permitted him under the Messianic Believer umbrella does not comport with his religious beliefs, the Court finds that Plaintiff has met his burden of demonstrating the existence of a genuine issue of material fact. In short, Plaintiff's evidence is that he is not permitted to possess personal food items that comport with his beliefs[17] and that Defendants will not provide a diet for him that is consistent with his religious beliefs. *See, e.g.*, *Second. Am. Compl.* [#25] at 12. He states that this is an ongoing problem and that he is forced to fast every week on the Sabbath and during the holy days because of this issue, which sometimes includes multiple days in a row when the holy days fall adjacent to the Sabbath. *Id.*; *see also id.* at 8 (describing some instances in which he attempted to follow his diet but was disciplined for failure to comply with a kosher diet, which is not identical). Based on this evidence, the Court finds that Plaintiff has demonstrated the existence of a genuine issue of material fact about whether food limitations constitute a substantial burden. *See, e.g.*, *Harris v. Avant*, No. 10-cv-00027-

---

[16] Plaintiff seeks certain injunctive relief that includes restoration of earned time lost, expungement of COPD violations pertaining to this action, and a change to Plaintiff's classification regarding restricted privileges, all or some of which stem from his issues with missing work. *See Second Am. Compl.* [#25] at 5.

[17] Plaintiff provides a list of foods considered to be "unclean" as well as the reason each is unclean, including citations to the Bible. *See* [#92-1] at 52-61.

PAB-CBS, 2012 WL 1079318, at *1 (D. Colo. Mar. 29, 2012) (citing *Subil v. Sheriff of Porter Cnty.*, No. 2:04-CV-257 PS, 2005 WL 1174218, at *4 (N.D. Ind. Apr. 29, 2005) ("Lack of a Kosher diet at the jail where he is housed may constitute a substantial burden, but missing an occasional meal while being transported to and from court is simply an inconvenience and not a substantial burden.") (citation omitted)).

To the extent Plaintiff complains that he is not permitted an appropriate place in which to worship, no evidence has been presented in support of this aspect of his RLUIPA claim. The only evidence raised in connection with this issue is that Warden Rae Timme "assigned the task to Ted Stenzel to speak with Plaintiff regarding a place to worship, which was denied." *Second Am. Compl.* [#25] at 10. Plaintiff fails to direct the Court's attention to any evidence that his exercise of religion is substantially burdened in this way.[18]

To the extent Plaintiff complains that his faith group is not recognized independently of the Messianic Believers umbrella group, the Court notes that such lack of recognition does not per se violate his rights, so long as his religious beliefs are not substantially burdened. If, for example, Plaintiff's dietary needs are otherwise met, the Constitution does not required that Biblical Christianity be classified in its own independent category instead of included under an umbrella group with other faith groups, so long as the government is not:

> (1) requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief, such as where the government presents the plaintiff with a

---

[18] To the extent Plaintiff provides additional statements in his briefs on this issue, the Court notes that such statements are not sworn and, even if they were, they would be insufficient evidence to meet this element of a RLUIPA claim. *See, e.g.*, *Surreply* [#95] at 3, 4.

> Hobson's choice–an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Abdulhaseeb*, 600 F.3d at 1315. The evidence does not support a finding that CDOC will not permit exceptions to a faith group which shares most but not all beliefs with the other faith groups classified under the same umbrella. Although CDOC *may* choose to reclassify Biblical Christianity outside of the Messianic Believers umbrella in order to accommodate Plaintiff's beliefs, the evidence does not support a finding that it *must* do so in order to avoid substantially burdening Plaintiff's religious beliefs, so long as Plaintiff's needs are otherwise met to the extent constitutionally required. Accordingly, this part of his claim lacks merit and summary judgment should enter in favor of Defendants on this portion of Plaintiff's claim.

Accordingly, the Court **recommends** that Defendants' Motion [#90] be **granted in part and denied in part** with respect to the RLUIPA claim.

**C. State Law Claim**

Plaintiff bases this claim on allegations that Defendants violated Colo. Rev. Stat. § 17-42-101 by "failing to accommodate Plaintiff's religious beliefs and needs according to his faith group, Biblical Christian. These Defendants have been made aware of the on-going problems, were in positions of authority to correct them, but have failed to take the reasonable steps to do so." *Second Am. Compl.* [#25] at 4. In relevant part, this statute provides:

> (1) All persons who are confined to a correctional facility . . . shall have the right to worship according to the dictates of their consciences, and such persons shall be afforded a reasonable opportunity to freely exercise their religious beliefs without fear of retaliation or discrimination for the free exercise thereof. The practice of religion by any particular sect may not be curtailed or prohibited unless such practices threaten the reasonable security interests of the correctional facility. (2) Upon the request of any inmate, and

> to the extent practicable and consistent with reasonable security considerations, religious facilities shall be made available in a nondiscriminatory manner. . . . (3) [CDOC] shall permit access to objects of a religious nature where possession of such objects would not unduly burden the reasonable security interests of the correctional facility. Prison officials shall accord appropriate respect for sacred objects.

Defendants' only argument with respect to this claim is that it should be dismissed for lack of federal subject matter jurisdiction if summary judgment in their favor enters on Plaintiff's claims under the First Amendment and RLUIPA. *Motion* [#90] at 16-17. In light of the Court's recommendation on those two claims, a recommendation to dismiss the state law claim for lack of subject matter jurisdiction is not appropriate. In the absence of any other argument by Defendants with respect to this claim, the Court **recommends** that Defendants' Motion [#90] be **denied** to the extent it seeks dismissal of this claim.

## IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the Motion [#90] be **GRANTED in part and DENIED in part**.[19]

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

---

[19] If this Recommendation is adopted in full, the following claims will remain: (1) First Amendment, against all Defendants except Defendants Miklich and Stenzel; (2) RLUIPA, against all Defendants except Defendants Miklich and Stenzel; and (3) Colo. Rev. Stat. § 17-42-101, against all Defendants. Plaintiff's RLUIPA claim is limited to (1) Plaintiff's complaints of disciplinary action taken against him based on his failure to work on proscription days despite notifying his supervisors beforehand of his absences, and (2) Plaintiff's complaints that he is not permitted to obtain or possess personal food items comporting with his beliefs, and that Defendants will not otherwise provide a diet for him which is consistent with his beliefs. Neither Plaintiff nor Defendants make clear precisely which individual Defendants are impacted by these limitations of the RLUIPA claim, i.e., which Defendants were or were not involved with each of these asserted violations. Consequently, the Court does not make a recommendation regarding whether any particular Defendant is entitled to entry of summary judgment on this claim.

assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 26, 2015

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge